**UNITED STATES of America, Appellee,**

v.

**William Eugene CARTER, Appellant.**

**No. 14017.**

United States Court of Appeals, Fourth Circuit.

Jan. 27, 1972.

Butzner, Circuit Judge, concurred specially and filed opinion.

Boreman, Senior Circuit Judge, dissented and filed opinion.

Albert V. Bryan, Circuit Judge, disqualified himself.

————◆————

Allan M. Palmer, Washington, D. C. (Gerald E. Williams, Arlington, Va., on brief), for appellant.

C. P. Montgomery, Jr., Asst. U. S. Atty., (Brian P. Gettings, U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and BOREMAN, WINTER, CRAVEN, BUTZNER, RUSSELL, and FIELD, Circuit Judges, sitting in banc.*

WINTER, Circuit Judge:

After his motion to dismiss his ten count indictment was denied without evidentiary hearing, William Eugene Carter was convicted in the Eastern District of Virginia on charges of forgery and conspiracy, 18 U.S.C.A. §§ 495, 371 and 2, and sentenced to an aggregate term of sixteen years. The Virginia prosecution

---

* The case was originally argued June 1, 1970, before a panel consisting of Boreman, Winter and Butzner, Circuit Judges. By order of the court, the case was submitted in banc on November 12, 1971.

Counsel agreed to resubmission on the briefs and tape of original argument. Judge Bryan disqualified himself from participation in the case.

involved stolen Treasury checks, some of which were the object of an earlier prosecution against defendant in the District of Columbia. The motion was grounded upon the assertion that defendant had been promised, in consideration of his help and cooperation in apprehending and convicting other defendants in the District of Columbia, that he would not be prosecuted elsewhere for any crime arising from the stolen checks.

The correctness of the denial of the motion is the sole issue on appeal. We conclude that the motion should be the subject of evidentiary hearing to determine if a promise was made and, if so, by whom and of what scope. We vacate the judgment and remand the case for further proceedings.

I

In the posture of this case as it comes to us, defendant alleged that he incriminated himself and others and pleaded guilty to a misdemeanor charge of possession of stolen checks upon the promise of an Assistant United States Attorney for the District of Columbia that, except for the charge to which he pleaded guilty, defendant would not be prosecuted for commission of the crimes he divulged. The sworn statement of his counsel, who negotiated the agreement, was that defendant would not be prosecuted anywhere else for anything having to do with the stolen checks.[1] There was an unsworn general denial of these allegations.

It was also alleged, under oath, that defendant fully performed his part of the bargain to the complete satisfaction of the F.B.I. agents in charge of the case and that others were apprehended and

convicted on the basis of the information defendant supplied. Defendant pleaded guilty to the misdemeanor charge in the District of Columbia; and, when the extent of his cooperation was made known to the sentencing judge, defendant was placed upon a year's probation.

Defendant further alleged that he was prosecuted in the Eastern District of Virginia only when he refused further cooperation with a Secret Service Agent who was annoyed at the manner in which the F.B.I. had handled the case. The Secret Service Agent, early in his investigation, gained access to the data divulged by defendant to the F.B.I.; but he claimed, in a less than searching interrogation, that he used none of it to build the case against defendant in the Eastern District of Virginia.[2]

II

■ At the outset, we recognize that we are dealing with allegations and not facts. We cannot, therefore, make any final disposition of the case. We recognize also with respect to the claim of immunity from further prosecution that ordinarily immunity in the federal system may be granted only with the approval of the court pursuant to express statutory authorization. See, e. g., 18 U.S.C.A. § 2514. Cf. Dixon v. District of Columbia, 129 U.S.App.D.C. 341, 394 F.2d 966 (1968). There is no allegation that the District of Columbia court knew that any promise of immunity had been made to defendant or that the court approved it.

■ Nonetheless, we conclude that if the promise was made to defendant as alleged and defendant relied upon it in incriminating himself and others, the government should be held to abide by

---

1. Counsel's affidavit is phrased that he "understood" that this was the agreement. He alleged corroboration of this understanding in the form of a comment from the F.B.I. agent who participated in negotiation of the agreement that, when apprised of the subsequent contemplated prosecution in the Eastern District of Virginia, the agent termed it "unfair" in the light of the previous agreement.

2. In answer to defendant's motion to dismiss the indictment, the government alleged only that the evidence to be used in the Virginia prosecution "was gained *substantially* independent of the statement furnished to the F.B.I. by the defendant." (emphasis supplied)

its terms. United States v. Paiva, 294 F.Supp. 742 (D.D.C.1969) so holds: "if, after having utilized its discretion to strike bargains with potential defendants, the Government seeks to avoid those arrangements by using the courts, its decision so to do will come under scrutiny. If it further appears that the defendant, to his prejudice, performed his part of the agreement while the Government did not, the indictment may be dismissed." 294 F.Supp. at 747. We approve the holding and direct that it be applied here if the facts alleged be proved. See also, State of Maryland v. Michael Isele, Criminal Nos. 247 and 248 (Circuit Court for Calvert County, Maryland, November 4, 1968).

The only distinction between *Paiva* and the instant case is that in *Paiva* the bargain was breached in the district in which it was made while here the bargain was allegedly breached in a neighboring district. We think this a distinction without a difference. The United States government is the United States government throughout all of the states and districts. If the United States government in the District of Columbia, acting through one of its apparently authorized agents, promised that the sole prosecution against defendant would be the misdemeanor charge in that jurisdiction, and defendant relied on the promise to his prejudice—facts which must be proved in the plenary hearing if the indictment is to be dismissed—we will not permit the United States government in the Eastern District of Virginia to breach the promise.

Sound reasons of public policy support this result. Many federal crimes have multistate ramifications and are committed by persons acting in concert. If we hypothesize a single defendant charged with the interstate transportation of a stolen motor vehicle through several states, we would not question that the efficient administration of justice would support the authority of the prosecutor in one of those states to obtain an indictment and bargain for a guilty plea, agreeing that all offenses in the other jurisdictions would be disposed of in the single case. If there is added to the hypothetical codefendants and, if the plea bargain includes a promise of cooperation in their disclosure and/or their prosecution, the desirability of the result we reach becomes more apparent. A contrary result would constitute a strong deterrent to the willingness of defendants accused of multistate crimes to cooperate in speedy disposition of their cases and in apprehending and prosecuting codefendants.

If there be fear that an United States Attorney may unreasonably bargain away the government's right and duty to prosecute, the solution lies in the administrative controls which the Attorney General of the United States may promulgate to regulate and control the conduct of cases by the United States Attorneys and their assistants. The solution does not lie in formalisms about the express, implied or apparent authority of one United States Attorney, or his representative, to bind another United States Attorney and thus to visit a sixteen year sentence on a defendant in violation of a bargain he fully performed. There is more at stake than just the liberty of this defendant. At stake is the honor of the government public confidence in the fair administration of justice, and the efficient administration of justice in a federal scheme of government.

### III

The judgment of conviction is vacated and the case remanded for evidentiary determination of the issue raised by the motion to dismiss. If the promise was made, relied upon and breached as alleged, the indictment should be dismissed; otherwise, the judgment may be reinstated.

Vacated and remanded.

### ADDENDUM

Subsequent to the preparation of the foregoing opinion, the Supreme Court decided Santobello v. New York, 404 U.S.

257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). We deem this decision additional support for the result we reach. "[A] constant factor [in the disposition of charges after plea discussions] is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." 404 U.S. at 262, 92 S.Ct. at 499.

BUTZNER, Circuit Judge (concurring specially):

I concur in remanding this case for an evidentiary hearing on the motion to dismiss, but I think we should refrain from making a decision until we know all the facts.

BOREMAN, Senior Circuit Judge (dissenting):

On August 9, 1968, in Washington, D. C., Carter was arrested by special agents of the Federal Bureau of Investigation. At the time of his arrest he was in a car and the agents recovered from the vehicle approximately $156,000 in stolen government checks. Carter had purchased these checks from the actual thief and, when arrested, was attempting to sell them to a third party. In return for information furnished concerning the theft, an Assistant United States Attorney for the District of Columbia agreed to permit Carter to plead guilty to one misdemeanor charge based upon a charge of possession of these checks. As a result of Carter's cooperation the principal thief was arrested, charged, and pleaded guilty to a felony in the District of Columbia. Carter was placed on probation for one year by the Court of General Sessions of the District of Columbia[1] on his plea of guilty to possession of stolen government property, a violation of the District of Columbia Code.

The conviction which Carter now appeals resulted from his activities in the Eastern District of Virginia in connection with the forging and uttering of stolen government checks other than those he was attempting to sell at the time of his arrest in the District of Columbia.[2] Carter had originally purchased approximately $250,000 in stolen checks. After this purchase, a large quantity of these checks were forged and cashed at Virginia banks pursuant to a conspiracy among Carter and others, most of whom were close friends or relatives of Carter. These crimes were perpetrated through the use of false District of Columbia Department of Sanitation and Engineering identification cards obtained by Carter. Apparently, after his supply of false identification cards was exhausted, Carter began looking for a package deal to get rid of the remaining checks and it was while he was in the process of making such a deal that he was arrested in Washington, D. C. The possession charge in the District of Columbia included only those checks found at the time of Carter's arrest. The Eastern District of Virginia charges relating to forging and uttering, brought subsequent to the negotiations and entry of Carter's guilty plea in the District of Columbia, were based on criminal activities involving stolen Treasury checks other than those which led to the possession charges in the District of Columbia.

Although the F.B.I. passed Carter's statement on to the Secret Service agent investigating the forging and uttering

---

1. The Court of General Sessions of the District of Columbia has undergone changes due to the July 1970 reorganization of the courts in the District of Columbia. In 1968, at the time Carter was prosecuted in the District of Columbia, that court had criminal jurisdiction of violations of the District of Columbia Code. The charges leading to the instant appeal, which, as hereinafter explained in the text arose in the Eastern District of Virginia, were based on violations of general federal law.

2. The majority's statement that "The Virginia prosecution involved stolen Treasury checks, some of which were the object of an earlier prosecution against defendant in the District of Columbia,", is somewhat misleading, according to my understanding of the facts of this case.

aspects of the case, from information before us on appeal it is apparent that independently-gathered evidence would, and did, lead the Secret Service to Carter. Carter's statement was not used against him at the Virginia trial nor were the checks involved or the arrest made in the District of Columbia introduced in evidence by the Government. Carter's sole contention on appeal is that the Eastern District of Virginia indictment should have been dismissed because both Carter and his attorney "understood" that the Assistant United States Attorney for the District of Columbia, in agreeing to accept a plea of guilty to one misdemeanor, was purporting to grant immunity from further prosecution for any criminal activity concerning the checks which Carter had purchased regardless of where the activity took place.

The majority concludes that the case must be remanded for evidentiary determination of the nature and extent of the plea bargain reached in the District of Columbia. With respect to the promise assertedly made by the District of Columbia Assistant United States Attorney, my brothers in the majority hold that "If the promise was made, relied upon and breached as alleged, the indictment should be dismissed. . . ." This direction is difficult to understand in light of the following colloquy at the hearing on Carter's motion to dismiss the indictment between the district court and Allan M. Palmer, Carter's defense counsel in both the District of Columbia and Eastern District of Virginia proceedings:

> THE COURT: Are you saying you had an understanding with Mr. Jones [F.B.I. agent] and with Mr. Collins [Assistant U.S. Attorney for the District of Columbia] that if he [Carter] would divulge all he knew, that it not only would wrap up the pending charge

in the District, but all possible charges, if any, growing out of his participation with these checks in Virginia and any other state?

> MR. PALMER: Let me say this, Your Honor. There was no specific point, there was no agreement in writing.

> THE COURT: I did not ask you about an agreement in writing. I asked you if that was your understanding.

> MR. PALMER: My understanding included all of these things I knew.

> THE COURT: Did Jones tell you? I do not want you to waste my time. Did Jones tell you specifically, if you get this boy [Carter] to talk, there will be no prosecution in Virginia for anything growing out of this? He either did or did not.

> MR. PALMER: No. I say no to that.

> THE COURT: Did Collins tell you that?

> MR. PALMER: No, Your Honor.

Thus it appears that no promise purporting to include Virginia prosecutions was expressly made.[3] The real nature of Carter's contention, as I understand it, is rather that while the scope of the agreement reached during the plea bargaining was never precisely delineated, defense counsel actually "understood" that the agreement encompassed all of Carter's activities connected with all of the stolen checks Carter had purchased and not merely the possession of those particular checks which were the subject of the then pending District of Columbia charges. Since it was determined by the district court that there was no express promise made affecting federal prosecution in Virginia, which determination finds support in the record as noted above, a remand for a redetermina-

---

3. The district court found, at the close of the hearing on Carter's motion, that:
   Your motion to dismiss [on] the arrangement he allegedly had is denied on two grounds. First, you have not satisfied the Court you had an ar-

rangement that would affect prosecution in Virginia, and, secondly, even if you had, the Court would not honor an arrangement made by a D.C. District Attorney.

tion of that same question appears to me to be wholly without justification. If the purpose of the remand is to ascertain, in the light of representations actually made, whether there was any *reasonable* basis for such an understanding on the part of Carter and his counsel as claimed by them, then the premise ("If the promise was made . . .") of the majority's holding as to Carter's entitlement to relief from his Virginia conviction does not seem to reach this question. This and other difficult legal questions may confront the district court after full factual development. It is possible, for example, that Carter and his counsel jumped to the conclusion that the scope of the agreement extended beyond the District of Columbia charges but it is further possible that the evidence would support a finding that the representations of the Assistant United States Attorney were not *reasonably* susceptible to such a broad and all-encompassing construction. Such possibilities would support different arguments bearing on considerations of "the honor of the government, public confidence in the fair administration of justice, and the efficient administration of justice in a federal scheme of government," factors which are said by the majority to be "at stake" in the decision of this case. The majority opinion does not deal adequately with such possibilities and some clarification would be helpful to the district court on remand.

My primary concern here, however, is that I do not believe Carter to be entitled to relief in this case under any theory which might be proved in an evidentiary hearing, and that a remand is therefore wholly unnecessary. Even assuming that both Carter and his experienced counsel actually and reasonably understood that the plea bargain reached in the District of Columbia purported to encompass all of Carter's criminal activities concerning the checks, I am persuaded that the United States Attorney's office for the District of Columbia could not enter into a valid plea bargaining agreement to bind the district court and the

federal prosecutor in another jurisdiction with respect to separate and wholly different crimes committed outside the District of Columbia. The majority's holding to the contrary judicially expands the jurisdictional powers of federal prosecutors far beyond those reasonably necessary for the performance of their duties while at the same time imposing an unwarranted restriction upon the recognized powers and duties of other prosecutors and of the district courts to deal effectively with crimes committed within their respective jurisdictions.

If courts were permitted to decide cases because of sympathetic considerations I would have no difficulty in agreeing to a remand which included proper and adequate directions to the lower court. But the injustice to Carter here, if any, was accomplished within the District of Columbia by an official of that jurisdiction. The executive officials and courts of the Eastern District of Virginia should not be prevented from seeking to punish crimes victimizing the people of that district because an official elsewhere has overstepped the limits of his power. It can, of course, be contended that the District of Columbia courts can reach only the guilty plea entered by Carter pursuant to the asserted agreement, and that this would not suffice since Carter also gave an incriminating statement which cannot now be withdrawn. The problem thus presented is a real one and is not readily solved. I am convinced, however, that in bending over backward to be fair to this defendant, the majority has overlooked the legitimate interests of the courts, officials and people of the Eastern District of Virginia.

It is possible that an entirely equitable judicial solution may not be found on the facts of this case. Carter might move for reduction of his sentence in Virginia, or, if in fact Carter was misled by, and acted to his prejudice upon, the representations of the District of Columbia Assistant United States Attorney, the case may be appropriate for executive clemency. But the idea advanced and adopted by my brothers, that the

District of Columbia Assistant United States Attorney could bind federal prosecutors and courts in Virginia with respect to separate offenses committed in that jurisdiction, is unacceptable to me.

Both Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), and United States v. Paiva, 294 F.Supp. 742 (D.D.C.1969), cited by the majority in support of its decision, involved a plea bargain breached in the district in which it was made. My brothers "think this a distinction without a difference." I cannot agree.

For the reasons stated, I respectfully dissent.