**UNITED STATES of America,**

v.

**Rene BOULIER, Defendant.**

**No. 70–CR–543.**

United States District Court,
E. D. New York.

Aug. 10, 1972.

---

3. The courts continue to differ as to the need to prove that the borrower under an interest free arrangement between controlled members realized gross income from the borrowed funds. In *Forman*, supra, the Second Circuit seemed to indicate Section 482 could be applied without reference to whether the borrower had income during the year. In refusing to adopt this position, the Tax Court observed that the borrower in *Forman* did in fact apparently receive income. Kerry Investment Co., 58 T.C. 479, 6/20/72.

"[B]ased upon [Huber Homes, Inc.] we hold that the [Commissioner] lacked legal authority to make an adjustment under Section 482 as to funds which did not produce income during the year [in question]." *Id.*

We need not make such a determination here, in view of our holding that income earned and interest paid by the borrowing group as a whole must be considered, under the facts in this case, in determining the true taxable income to plaintiff (as lender) under Section 482.

Robert A. Morse, U. S. Atty., E. D. N. Y., for United States; Thomas R. Puccio, Asst. U. S. Atty., of counsel.

Robert Kasanof, The Legal Aid Society, New York City, for defendant; Edward Kelly, New York City, of counsel.

Memorandum of Decision and Order

MISHLER, Chief Judge.

Defendant was convicted after trial to a jury on June 29, 1972, together with co-defendants George Nathan, Robert Brown and Clarence Nash. Immediately prior to trial, the defendant moved to dismiss the indictment on the ground that the judgment of conviction on a guilty plea to an information in the Southern District of Florida, docket No. 71–776, provided the defendant with the defense of double jeopardy and further that the United States Attorney for the Southern District of Florida had agreed to dismiss the indictment pending in this District as part of the plea bargain.

This court, in a memorandum of decision and order dated June 9, 1972, rejected the double jeopardy claim, denied the motion to dismiss on that ground and directed the defendant to make a formal motion based on the alleged promise of the United States Attorney for the Southern District of Florida, in the event of conviction. The defendant having moved as directed by the court, the court held an evidentiary hearing.

An indictment charging the defendant and twelve co-conspirators with a conspiracy in violation of 21 U.S.C. § 174 was filed in the Southern District of Florida on October 14, 1969, docket No. 69–443–Cr–JE.[1]

The defendant was a fugitive until he was forcibly brought from Colombia,

---

1. Seven defendants were also charged with receiving, concealing and transporting cocaine in count two of the indictment.

The defendant was not charged in count two.

South America to Miami, where he was arrested at the Miami Airport on October 18, 1971. On October 19th George B. Weires, an attorney admitted to practice in the United States District Court for the Southern District of Florida, was assigned to represent the defendant. Mr. Weires was admitted to the Bar less than two years, but had represented defendants in approximately twenty criminal cases. He had gained experience in law enforcement as a stock exchange attorney and legal officer for several years, as a New York State law enforcement officer for two years, and as an immigration and customs officer for about eight years.

The above (New York) indictment, charging a conspiracy under 21 U.S.C. § 174, was filed August 6, 1970.[2] On November 2, 1971, an arrest warrant directing the United States Marshal to arrest the defendant Rene Boulier was sent to the United States Marshal for the Southern District of Florida. In the meantime, Thomas Dugan, a Special Agent of the Bureau of Narcotics and Dangerous Drugs (BNDD), in charge of the investigation and preparation of the case pending in the Eastern District of New York, was in Florida on unrelated business. In early November he interviewed the defendant at Dade County Jail in the hope or expectation of obtaining evidence that would aid in obtaining a new trial for an important government witness who had been convicted in the state court.[3]

Assistant United States Attorney Neal Sonnett, who had been in charge of this multi-defendant action, had successfully prosecuted the other defendants charged in the Florida indictment. At the time of the defendant's arrest, the defendant's case was assigned to Assistant United States Attorney Michael Patrick Sullivan. Mr. Sullivan, newly admitted to the Bar, was appointed to the United States Attorney's staff on June 1, 1971, and had no prior legal experience.

Soon after his appointment, Mr. Weires contacted AUSA Sullivan for the purpose of exploring the possibility of a plea to a lesser offense in exchange for the defendant's cooperation. Mr. Sullivan advised the Regional Office of the BNDD. Thereafter, and on November 24, 1971, and November 30, 1971, Special Agent Cantu of the BNDD interviewed the defendant in the presence of his counsel at the Dade County Jail. The defendant advised Mr. Cantu that he had evidence of perjury in the state court trial charging Gomez with rape, that he knew the whereabouts of Jesus Torrado, a fugitive charged in the Florida indictment, and that he was ready to give information concerning:

1. The method of smuggling cocaine from South America through Mexico and into the United States;

2. a recent secret process for smuggling cocaine into the United States as a liquid and then restoring it to its original state;

3. the address of United States violators dealing in narcotics in South America;

4. the location of two fugitives being sought by the Bureau residing at that time in Bogota, Colombia; and

---

2. This indictment named Fernando Acosta, Raul Fernandez, Jesus Torrado, Clarence Jackson, Oscar Estrata, Luis Gomez and the defendant, also named in the Florida indictment, as being members of the conspiracy. On the other hand more than twenty-five of the co-conspirators named in the Florida indictment were not named in the New York indictment.

3. The witness Luis Gomez had been convicted in the state court of raping Lucrecia Lum and was sentenced to an indeterminate term with a maximum of life. Lucrecia Lum was named as a co-conspirator in the Florida indictment. Mr. Dugan believed that she and other co-defendants, on learning that Mr. Gomez was to testify for the government, gave false testimony upon which Mr. Gomez was convicted. The defendant indicated that he had spoken to Lucrecia Lum and the other defendant Jesus Torrado and that they had both admitted that the testimony was false and given in retribution for Gomez' cooperation in the prosecution of the Florida indictment.

5. the location of cocaine laboratories in Colombia.

He also offered to:

6. introduce an undercover agent to one Carlos Lorenzo, who was known to the Bureau as an important narcotics dealer; and to

7. introduce an undercover agent to one Laguayo who usually purchases 20 to 25 kilograms of cocaine from Jesus Torrado.

Mr. Sullivan felt that he had a weak case. United States District Judge Joe Eaton, to whom the case was assigned, was pressing for trial since the defendant was in custody under an old indictment.

In the meantime, Assistant United States Attorney Desmond O'Sullivan, who had successfully prosecuted some of the defendants under the indictment in the Eastern District of New York,[4] had terminated his employment.[5] Special Agent Dugan conferred with AUSA Raymond J. Dearie, Eastern District of New York. At his request, Mr. Dearie called Mr. Sullivan to advise him of the interest of the United States Attorney of this District in bringing Mr. Boulier to trial on the indictment in this District as expeditiously as possible. Mr. Dearie and Mr. Sullivan had two or three additional telephone conversations over the next few days in which Mr. Dearie repeated the interest of the United States Attorney's office for the Eastern District of New York in pressing for early trial here. Mr. Dearie advised Mr. Sullivan that, based on the information Mr. Dugan had given him, the government had a strong case against Mr. Boulier here.

In the meantime, Mr. Sullivan advised Mr. Dearie of the progress he was making in the disposition of the pending indictment in the Southern District of Florida. Mr. Sullivan advised Mr. Dearie that he had mistakenly believed that the defendant would plead to the indictment since he, Mr. Sullivan, did not realize that the charge carried a mandatory five year term, and that, therefore, he was ready to offer the defendant a superseding information charging a violation under 18 U.S.C. § 371 consisting of a conspiracy to violate 26 U.S.C. § 4704(a). Mr. Sullivan never advised Mr. Dearie or anyone else in the office of the United States Attorney for the Eastern District of New York that his agreement with the defendant would in any way affect the prosecution of the indictment pending in this District.

Mr. Sullivan believed that upon entry of a judgment of conviction on the information filed in the Southern District of Florida, double jeopardy would attach to the New York indictment. He so advised Mr. Weires. Mr. Sullivan represented to Mr. Weires that he had been in touch with the office of the United States Attorney for the Eastern District of New York and gave Mr. Weires reason to believe that the United States Attorney for the Eastern District of New York would not oppose his motion to dismiss the New York indictment on double jeopardy grounds.

The understanding between Mr. Sullivan and Mr. Weires and the defendant was that, in consideration of the defendant's cooperation, as hereinabove set forth, the government would file an information charging a conspiracy under 18 U.S.C. § 371; the defendant would plead guilty to the charge in the information; the government would ask the court to dispense with the presentence report and recommend probation for the defendant; the government would move to dismiss the Florida indictment 69–443–Cr–JE; thereafter the defendant would move to dismiss the New York in-

---

4. Defendants Vega, Carew, Allen, Wyler, Rivera, Orlando Guridi, Louis Guridi, Reys, Moore and Torrado were convicted after trial to a jury on August 13, 1971, which judgment of conviction was affirmed 458 F.2d 1234 (2d Cir. 1972).

Defendant Bob Wyler's appeal has been reinstated.

5. The case was assigned to AUSA Thomas Puccio, who was then engaged in other matters.

dictment and the New York indictment would be dismissed.

On December 20, 1971, the defendant pleaded guilty to the superseding information. Mr. Sullivan moved to dismiss indictment No. 69–443–Cr–JE.[6] Mr. Sullivan recommended probation and suggested that the court pronounce sentence at that time. Judge Eaton declined to sentence without a presentence report. The defendant's bail conditions were modified and he was released on bail on December 23, 1971.[7]

The defendant had been dealing with internationally known distributors of cocaine for a long period of time. He knew that the Bureau was aware of his activities. He had information that would lead investigators to large sources of supply and to important violators responsible for substantial importation of cocaine into the United States. He made promises of help and cooperation to obtain the bargain he ultimately made, never intending, however, to supply any of the information sought.

After his release, he went to the Regional Office of the Bureau of Narcotics and Dangerous Drugs on December 23, 1971, for the purpose of giving the appearance of performing his side of the bargain. He gave useless and worthless information. He conditioned the introduction of an undercover agent to Carlos Lorenzo on outrageous demands for large sums of money, insisting that the Government provide him with a luxurious apartment, motor vehicles and substantial spending money. He insisted that the government finance a trip to South America without supervision for the purpose of contacting South American sources. He imprecisely identified Sylvester Moore, also known as "Live Wire" Moore, who already had been convicted in this District. The many attempts by the Special Agents to obtain precise information or information of value were fruitless.

When the defendant appeared for sentencing, AUSA Ullman, appearing for the government, advised the court of the refusal of the defendant to perform the terms of his bargain and that the government would not recommend probation but rather a three year term of imprisonment. The court imposed a two year sentence on January 27, 1972, and the defendant commenced serving his term.

In the meantime, the United States Attorney for this District learned that the United States Marshal for the Southern District of Florida could not locate the arrest warrant dated August 13, 1970 and sent to the Marshal on November 2, 1971. A second warrant of arrest dated January 11, 1972, was sent to the United States Marshal for the Southern District of Florida on January 11, 1972.

■ The defendant argues that under United States v. Carter, 454 F.2d 426 (4th Cir. 1972), the indictment must be dismissed. In Carter " . . . the defendant [alleged that he] incriminated himself and others and pleaded guilty to a misdemeanor charge of a possession of stolen checks upon the promise of an Assistant United States Attorney for the District of Columbia that, except for the charge to which he pleaded guilty, defendant would not be prosecuted for commission of the crimes he divulged." The court cited with approval United States v. Paiva, 294 F.Supp. 742, at page 747 (D.D.C.1969), where the court said:

"If it further appears that the defendant, to his prejudice, performed his part of the agreement while the Government did not, the indictment may be dismissed."

The court in Carter in an "addendum opinion" noted that the Supreme Court in Santobello v. New York, 404 U.S. 257,

---

6. The record before the court does not show that Judge Eaton acted on the motion but it is assumed that the indictment was dismissed.

7. This apparently was an oversight, since the arrest warrant issued out of this district was filed in the Southern District of Florida.

92 S.Ct. 495, 30 L.Ed.2d 427 (1971), supported the results in *Carter*.

*Santobello* did not involve a breach by the defendant of his agreement which had served as the basis for the acceptance of the plea by the prosecutor. It involved only the failure of the prosecution to carry out its bargain, albeit inadvertently. In *Carter* the court, assuming the truth of the allegations in the affidavit supporting the motion to dismiss for the purposes of that determination,[8] stated:

> "It was also alleged, under oath, that the defendant fully performed his part of the bargain to the complete satisfaction of the F.B.I. agents in charge of the case and that others were apprehended and convicted on the basis of the information the defendant supplied."

The difference in the facts here from those assumed in *Carter* requires a different result. The fraud practiced by the defendant in making representations of intended cooperation and his failure to cooperate are not compelling reasons for requiring the government to abide by a bargain it did not make.

■ The authority of the United States Attorney for the Southern District of Florida to bind the United States Attorney for the Eastern District of New York in a matter pending in the Eastern District of New York is also brought into question. *Carter* supports the principle. The court said 454 F.2d at p. 428:

> "The United States government is the United States government throughout all of the states and districts. If the United States government in the District of Columbia, acting through one of its apparently authorized agents, promised that the sole prosecution against defendant would be the misdemeanor charge in that jurisdiction, and defendant relied on the promise to his prejudice—facts which must be proved in the plenary hearing if the indictment is to be dismissed—we will not permit the United States government in the Eastern District of Virginia to breach the promise."

No other case has been cited to support the authority of the United States Attorney of one district to agree to dismiss an indictment in another district. No one in the office of the United States Attorney for the Eastern District of New York represented or knew that Mr. Sullivan represented that the indictment would be dismissed. No one authorized Mr. Sullivan to speak for the United States Attorney for the Eastern District of New York.

■ In the face of statutory authority, regulations of the Attorney General of the United States and practice limiting the authority of United States Attorneys, apparent authority may not be found. 28 U.S.C. § 519 charges the Attorney General of the United States with the duty of directing all United States Attorneys and Assistant United States Attorneys in the discharge of their respective duties. The power of supervision and direction includes the

---

8. The court remanded for an evidentiary hearing to determine the issues raised.

9. The manual for United States Attorneys issued by the Department of Justice states in part:

AUTHORIZATION FOR
DISMISSAL

In every. criminal prosecution in which it is proposed to dismiss an indictment or information in whole or in part, where a plea has not been entered and sentence imposed, the Assistant U.S. Attorney should prepare in quadruplicate Form No. USA 900, "Authorization for Dismissal of Indictment and Information", setting forth the reasons for recommending dismissal. Dismissal of all the counts against a particular defendant is the dismissal of an entire indictment or in-

power to require the United States Attorney to first obtain approval for dismissal of an indictment within his district. This has been both the rule and practice. United States v. Greater Blouse, Shirt and Neckwear Contractors Assn., 228 F.Supp. 483 (S.D.N.Y.1964); United States v. Saunders, 435 F.2d 683 (5th Cir. 1970); Wright, 3 Federal Practice and Procedure § 811, p. 302.[9] The authority of the United States Attorney to prosecute is clearly limited "within his district" under 28 U.S.C. § 545.

The authority of the United States Attorney should not be expanded beyond the limits fixed by statute and practice. The right and duty of a United States Attorney to prosecute for crimes within his district should not be denied because of unauthorized action by an official outside the district. Other means are available to preserve the integrity of the government's agreements.

*Santobello* suggests that the question of whether the petitioner is entitled to specific performance of the plea bargain or withdrawal of the plea should be left to the court. In this case the defendant would not be entitled to a dismissal of the indictment, however, since the United States Attorney for the Southern District of Florida had no jurisdiction, power, or authority over the indictment in the Eastern District of New York.[10]

The motion is in all respects denied.[11] It is so ordered.

---

formation as to that defendant. The U. S. Attorney is authorized to dismiss an indictment only in part without prior authorization, viz, with respect to a particular defendant who has entered a plea and has been sentenced on one or more counts. In other words, if a defendant has been convicted on at least one count, generally the U. S. Attorney is authorized to dismiss without prior authority the remaining counts against him, considering the facts and circumstances of the case. The authority to dismiss without prior authorization does not extend to codefendants against whom all counts are still outstanding.

10. Mr. Sullivan represented that the government would not oppose an application to withdraw the plea of guilty to the Florida information. The defendant would be credited for any time served against the judgment of conviction obtained in this district.

11. The court also notes the impairment of its discretionary authority to dismiss indictments under Rule 48(a) if it is compelled to legitimatize such agreements.