**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**Richard Eugene LONG,**
**Defendant-Appellee.**

No. 74–1172.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 8, 1974.

Decided Feb. 26, 1975.

Rehearing Denied June 6, 1975.

---

Henry A. Schwarz, U. S. Atty., William C. Evers, III, Asst. U. S. Atty., E. St. Louis, Ill., for plaintiff-appellant.

Jerome J. Schlichter, E. St. Louis, Ill., for defendant-appellee.

Before MARIS,* HASTINGS and TONE, Circuit Judges.

MARIS, Circuit Judge.

The Government has taken this appeal from an order of the district court dismissing an indictment charging the defendant, Richard Eugene Long, with knowing possession of a sawed-off shotgun not registered in the National Firearm Registration and Transfer Record and not identified by a serial number, in violation of section 5861(d) and (i) of the Internal Revenue Code of 1954, as amended by the Gun Control Act of 1968. 26 U.S.C.A. § 5861(d) and (i).

The facts disclosed by the record are that on January 26, 1973 the defendant was arrested for alleged narcotics and firearms violations by agents of the Illinois Bureau of Investigation, herein referred to as IBI, who then filed charges against him for the state narcotics viola-

tions only. The defendant was held in state custody in the St. Clair County jail in Belleville, Illinois. Several days thereafter, the defendant's father, Herbert E. Long, presently and for the past 17 years a patrolman employed by the Herrin, Illinois Police Department, and the defendant's brother, Danny Ray Long, met with Ronald Grimming, a special agent of the IBI at the IBI office in Belleville to request permission to see the defendant and to inquire into the charges against him. At this meeting Herbert and Danny Long and Grimming arrived at an agreement, subject to the defendant's acquiescence, which the Longs then communicated to the defendant in the county jail. Later, in the presence of his brother and father, Grimming, another IBI agent, and Lieutenant Robert Vergess, Chief Investigator of the St. Clair County Sheriff's Office, the defendant assented to the deal, the terms of which were, however, not stated at that time. There immediately followed an interview of approximately two hours in which the defendant answered all questions put to him. In the next few weeks the defendant supplied information by telephone to the sheriff's office at the county jail or to Grimming in the IBI office. Subsequently, the defendant was indicted on the state drug offense and the trial is presently pending in the state court.

On August 21, 1973 a federal grand jury handed down an indictment against the defendant for the firearms violations. The defendant filed a motion in the district court to dismiss the indictment as contrary to a grant of immunity and requested a hearing to determine whether a promise had been made and, if so, its scope. The district court granted the defendant's request for a hearing at which it received conflicting testimony concerning the substance of Grimming's promise, the kind of cooperation required of Long and the extent of Long's cooperation following the agreement. The defendant testified that he cooperated fully, telling all he knew.

* Of the Third Circuit, sitting by designation.

Herbert and Danny Long testified that Grimming, after stating to them that he was in a position to file state and federal charges against the defendant for firearms violations, would instead keep the defendant's sawed-off shotgun, which he then held, locked up in his safe, that no gun charge would ever be made and that the defendant would receive probation for any conviction on the drug charge if he would tell all he knew. Grimming admitted on cross examination that, in fact, he did keep the sawed-off shotgun in his safe until he turned it over to the federal authorities in the spring of 1973; however, Grimming insisted that he agreed only to make a recommendation to and advise the state and United States attorneys of the defendant's cooperation and that, in any event, the answers given by the defendant were evasive or untrue, that mere oral conversation is not "full cooperation", and that, in fact, the defendant did not cooperate and Grimming did not make the recommendations. Grimming further stated that he did not gain any essential information from Long related to his possession of the shotgun following the agreement made with Long at the county jail. The district court made the finding on the basis of the evidentiary hearing that "there did exist an agreement between the Defendant and IBI agent Grimming that the Defendant would not be prosecuted for any firearms violation if he cooperated and told what he knew regarding narcotics violations . . .", which cooperation, the court found, the defendant had given. The court concluded that it could properly dismiss the federal indictment which resulted from the breach of the state agent's promise on the grounds of fundamental fairness to the defendant and because, as the court expressed it, "IBI agents who investigate, arrest, and charge a Defendant with a federal violation are in a functional sense, and in the eyes of the accused, agents of the United States." The district court accordingly dismissed the indictment and this appeal by the Government followed. The issue primarily presented by the appeal is whether such an agency relationship existed or may be deemed to have existed between IBI agent Grimming and the United States Government as to give state agent Grimming the power to bind the federal government to keep the promise allegedly made by Grimming to the defendant while he was being held in state custody. In our consideration of this issue we are not indifferent to the fundamentally fair treatment which is the defendant's due; however, unless an agency relationship may be deemed under the facts of the case and the established law to have existed, the federal government cannot be held bound by the bargain alleged to have been made by the state agent, regardless of whether or not such a bargain was in fact made by the state officer.

At the outset we note that the district court offered no jurisprudential support for its conclusion that, absent an actual or apparent agency authorization, legal responsibility as principal may be imposed on the federal government for the actions of the state IBI agent.

Santobello v. New York, 1971, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427, on which the district court relied, is not applicable to this issue nor to the case generally. *Santobello* involved an intrastate controversy which the Supreme Court remanded to the state court either to resentence before a different judge or to allow the defendant to withdraw his guilty plea. The facts were that the prosecuting attorney failed to carry out a promise made by his predecessor to the defendant not to make a recommendation as to sentence to the judge. The basis of the Court's decision was threefold. First, that plea bargaining which is a desirable and essential component of the prompt and efficient administration of justice should be encouraged. Second, that the process must be attended by safeguards in recognition of the duties of the prosecution and to ensure to the defendant what is reasonably due him under the circumstances, and that where a promise is a significant part of an inducement to plead guilty the promise must be fulfilled. Third, that there is an

adjudicative element inherent in the acceptance or rejection of a plea of guilty.

The district court also relied on United States v. Carter, 4 Cir. 1972, 454 F.2d 426, cert. den. 417 U.S. 933, 94 S.Ct. 2646, 41 L.Ed.2d 237 and United States v. Paiva, D.D.C.1969, 294 F.Supp. 742, in which cases the courts enforced unauthorized promises by dismissing federal indictments brought against the persons to whom the promises were made. The promises, in both cases, were part of the plea bargaining process resulting from which both defendants entered guilty pleas. More importantly, the cases involved only federal government agents. In United States v. Carter, *supra*, 454 F.2d at 428, the court, which enforced the promise made by an Assistant United States Attorney in one district not to bring certain charges by dismissing those charges when they were brought by the United States Attorney in another district, expressly relied on the fact that the principal of each agent was the same United States Government.

United States v. McDaniel, 8 Cir. 1971, 449 F.2d 832, cert. den. 405 U.S. 992, 92 S.Ct. 1264, 31 L.Ed.2d 460, cited by the defendant, does not support the district court's decision here. In that case the federal court authorized dismissal of federal charges brought against the defendant if it could be established that the United States Attorney bringing the federal charges had requested and received a copy of the transcript of state grand jury proceedings wherein the defendant had testified under a state grant of immunity. The court stated that the rule of Murphy v. Waterfront Commission of New York Harbor, 1964, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678, controlled the disposition of the case. Ordinarily, therefore, under the rule of that case, the federal government would not be permitted to use the testimony compelled under the state grant of immunity as to matters relating to the federal prosecution. See as to such use immunity Kastigar v. United States, 1972, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212. In the *McDaniel* case the court held that

under the defendant's allegations, if proved, there would be a *prima facie* "use" by the United States Attorney of the state compelled testimony and that this would be misconduct on his part which would call for the dismissal of the federal indictment. Such misconduct by the federal prosecutor would seem clearly to run afoul of the rules for the administration of criminal justice in the federal courts laid down by the Supreme Court in the exercise of its supervisory powers. McNabb v. United States, 1943, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819. It will be observed that in the *McDaniel* case no agency relationship, such as is alleged here, was involved in the case but merely misconduct on the part of the federal prosecution. Here there is no evidence that the federal authorities authorized or even knew of the agreement between the defendant and agent Grimming and the district court made no such finding.

As we have indicated, the district court cited no precedent, and we have not found any, justifying the imposition upon the federal government of an agency relationship with the state agent in this case. The failure of the United States Attorney to carry out the agreement between the state agent and the defendant accordingly did not justify the dismissal on that ground of the federal indictment. For, as we have said, the existence of an agency relationship was essential to support the action of the district court here. In Newman v. United States, 9 Cir. 1928, 28 F.2d 681, 682, cert. den. sub nom. Boyd v. United States, 279 U.S. 839, 49 S.Ct. 253, 73 L.Ed. 986, the court said: "The government is not bound by acts of persons who never have been, or in fact have ceased to be, its agents." This remains horn book law. Here, as we have indicated, the defendant wholly failed to show an agency relationship between IBI agent Grimming, who is employed and paid by the State of Illinois, and the federal government, or even that the federal government was aware of the defendant's alleged agreement with

882

Grimming. We, therefore, need not consider whether the evidence supports the finding that the agreement described by the district court was in fact made by agent Grimming. We need only point out that responsibility on the part of the federal government for the agreement, if it was made, was not established by the fact, of which the district court took judicial notice, that "state IBI agents frequently are called upon to testify for the United States in federal criminal prosecutions" or by the fact that state agent Grimming arrested the defendant for offenses which could be prosecuted under either state or federal law. While, as the district court said, an IBI agent who investigates, arrests and charges a defendant with an offense which may be prosecuted federally may well be regarded by the accused as an agent of the United States, the federal government may not be held responsible for his agreement when no agency relationship in fact exists and the Government has no actual knowledge of the agreement.

Reversed and remanded with directions to reinstate the indictment.