**UNITED STATES of America**

v.

**Russell White BROTHERS, Jr., G. Thomas Nebel, and Thomas White Brothers.**

No. 3–92–00102.

United States District Court, M.D. Tennessee, Nashville Division.

Feb. 24, 1993.

Hal McDonough, Wendy Goggin, Asst. U.S. Attys. Nashville, TN, for plaintiff.

Michael E. Terry, Nashville, TN, for defendant Russell Brothers.

Hal D. Hardin, (for Kastigar hearing only), Nashville, TN, J. Sedwick Sellers, III, Washington, DC, Larry D. Thompson, Atlanta, GA, for defendant Thomas Nebel.

William H. Jeffress, Jr., Paul F. Enzinna, Miller, Cassidy, Larroca & Lewin, Washington, DC, for defendant Thomas Brothers.

## MEMORANDUM

HIGGINS, Judge.

The Court has before it the defendant Russell Brothers' motion (filed December 21, 1992; Docket Entry No. 191) to dismiss the indictment based on the government's breach of an immunity agreement and alternatively, based on the use of evidence tainted by Russell Brothers' immunity; the memorandum (filed December 21, 1992; Docket Entry No. 192) in support of the motion; the government's memorandum (filed January 20, 1993; Docket Entry No. 223) in opposition to the motion; and the transcript (filed February 17, 1993; Docket Entry Nos. 246–50) of the hearing on the motion held February 1–4, 6, 1993.

After a careful review of all the pleadings and exhibits in the record, as well as the transcript of the hearing on the motion, for the reasons stated below, the Court denies Mr. Brothers' motion to dismiss the indictment based on the government's breach of immunity and use of evidence tainted by his immunity.

## I.

On October 24, 1988, Russell Brothers was convicted in a Florida state court on drug trafficking, conspiracy and RICO charges arising out of his importation of cocaine into the United States. He was fined one million dollars and sentenced to sixty years in prison.

While Mr. Brothers was incarcerated, he was served with a federal criminal complaint[1] issued by the Northern District of Florida, which charged Mr. Brothers with conspiracy to import and distribute cocaine in the United States in violation of 21 U.S.C. §§ 963 and 846. After he was served with the criminal complaint, Mr. Brothers retained attorney Stephen K. Johnson to represent him.

Mr. Johnson contacted David L. McGee, the First Assistant United States Attorney in the Northern District of Florida, and told him that Mr. Brothers was willing to cooperate with the government and forfeit certain assets. Mr. Johnson and Mr. McGee reached an agreement whereby Mr. Brothers would cooperate with, and forfeit assets to, the Northern District of Florida, and in return Mr. Brothers would not be indicted in the Northern District of Florida and Mr. McGee would notify the appropriate authorities (including the Florida Statewide Prosecutor, the District of Montana and the Middle District of Tennessee) of Mr. Brothers' cooperation.[2] Both Mr. Johnson and Mr. McGee testified that Mr. McGee granted Mr. Brothers immunity from prosecution only in the Northern District of Florida, and that he did not purport to bind any other districts. Mr. Johnson testified that he made the terms of the agreement clear to Mr. Brothers.

Pursuant to the agreement reached between Mr. McGee and Mr. Johnson, Mr.

---

**1.** According to David L. McGee, the First Assistant United States Attorney in the Northern District of Florida, the criminal complaint was issued for two reasons. First, it was issued in connection with the pending prosecution of Russell Brothers in order to get jurisdiction over assets located outside the Northern District. Transcript of proceedings held February 1–4, 6, 1993 at 20 (McGee). Second, it was issued to obtain Mr. Brothers' assistance in the prosecution of Allan Ross, a "large scale drug trafficker" with "international connections." *Id.* at 21, 18 (McGee). Before the criminal complaint was issued, Mr. Brothers had refused to cooperate in

the investigation and prosecution of Allan Ross. *Id.* at 21–22 (McGee).

**2.** In accordance with this agreement, Mr. McGee wrote a letter to Joseph L. Larrinaga, Chief Assistant Prosecutor for the State of Florida, on July 8, 1992. *See* defendant's exhibit No. 3 to proceedings held February 1, 1993. In his letter, Mr. McGee outlined Mr. Brothers' substantial assistance (including providing information and testifying) in the federal prosecution of Allan Ross. *Id.* Mr. Brothers' sentence subsequently was reduced, making him immediately eligible for parole for his state convictions.

McGee directed Florida Department of Law Enforcement (FDLE) special agent William G. Wolfe to take a Rule 11 proffer from Mr. Brothers. Agent Wolfe took Mr. Brothers' proffer on August 28, 1991, at a Holiday Inn in Punta Gorda, Florida. Mr. Johnson was present, and knew that the parameters of the agreement had been established with Mr. McGee and that agent Wolfe was merely taking the proffer.

During the August 28, 1991, proffer, Mr. Brothers voiced concern over whether he would be prosecuted in Nashville. Agent Wolfe told Mr. Brothers that law enforcement officials in Tennessee, including state and federal agencies, were not interested in prosecuting him at that time. This was consistent with the belief expressed by Mr. Johnson that there were potential problems in Tennessee, but no active interest in indicting Mr. Brothers.

Mr. McGee contacted the Middle District of Tennessee as a result of his promise to contact other law enforcement agencies to inform them of Mr. Brothers' cooperation with the Northern District of Florida. He had several telephone conversations with Assistant United States Attorneys Harold McDonough and Wendy Goggin from the Middle District of Tennessee. The purposes of the telephone conversations were to coordinate the investigations of the two districts and to ask Mr. McDonough and Ms. Goggin to consider Mr. Brothers' cooperation with the Northern District of Florida during the course of their own negotiations with Mr. Brothers.

As a result of these telephone conversations, and contacts by Mr. Johnson, Mr. McDonough and Ms. Goggin decided to take Mr. Brothers' proffer, which they did on November 21 and 22, 1991. The ground rules for the proffer were set out in a letter from Mr. McDonough and Ms. Goggin to Mr. Johnson, dated November 19, 1991. The letter was signed by Mr. Brothers and Mr. Johnson on November 21, 1991. Under these ground rules, Mr. Brothers was to provide "truthful and complete" information, which information could not be used against him (except for impeachment), and the Middle District of Tennessee could make full derivative use of

his statements. The letter did not contain any promises with regard to the disposition of the case against Mr. Brothers in the Middle District of Tennessee.

The agents and attorneys from the Middle District of Tennessee present at the proffer did not believe Mr. Brothers' responses to their questions. They decided, therefore, to present an indictment before the federal grand jury. Although Mr. Johnson and Mr. Brothers were aware of the decision by the Middle District of Tennessee to pursue an indictment, Mr. Johnson informed Mr. McGee that Mr. Brothers would continue to cooperate with the Northern District of Florida in their criminal action against Allan Ross.

Allan Ross was tried in federal court in the Northern District of Florida in April and May, 1992. On March 11, 1992, Mr. Johnson, Mr. Brothers and Mr. McGee entered into a written cooperation agreement which formalized the terms of their previous oral agreement. The cooperation agreement specifically states that it is entered into between Mr. Brothers, Mr. Johnson and the United States Attorney's Office for the Northern District of Florida. The "agreement specifically excludes and does not bind any other state or federal agency, including other United States Attorney's Offices, from asserting any civil, criminal or administrative claim it may have against Russell Brothers." It also states that:

> e. The United States Attorney's Office agrees that at the request of Russell Brothers it will notify any relevant agency including federal law enforcement authorities in Montana and Tennessee and the Office of Statewide Prosecution in Florida of the nature, extent and importance of Mr. Brothers cooperation with the Northern District of Florida. The United States Attorney's Office, however, cannot control the actions of those named agencies and can in no way guarantee the action of other agencies.

## CONCLUSION

> f. There are no other agreements between the United States Attorney, North-

ern District of Florida, and Russell Brothers, and Russell Brothers enters into this agreement knowingly, voluntarily and upon advise of counsel.

Mr. Brothers was indicted by the federal grand jury in the Middle District of Tennessee on July 23, 1992. *See* Indictment (Docket Entry No. 1).[3] Mr. Brothers' motion to dismiss the indictment is based essentially on the premise that prosecutors in the Northern District of Florida promised him immunity which somehow binds prosecutors in the Middle District of Tennessee. He further argues that this grant of immunity prevents any use of his immunized information. The government responds that it is not bound by the terms of the immunity granted Mr. Brothers by the Northern District of Florida, and that the specific terms of the agreements between Mr. Brothers and both United States Attorneys' offices provide for derivative use of information provided by Mr. Brothers. The Court agrees with the government.

## II.

Under the rationale announced by the Supreme Court in *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), and the cases that follow it, the Court would need to make specific findings of fact with regard to all the evidence presented to the indicting grand jury by the government to determine whether it was tainted either directly or indirectly by the immunized information provided by Mr. Brothers. *See United States v. North,* 910 F.2d 843, 854, 872–73 (D.C.Cir.1990), *modified,* 920 F.2d 940 (D.C.Cir.1990), *cert. denied,* 500 U.S. 941, 111

3. A Superseding Indictment was returned on August 6, 1992 (Docket Entry No. 3). A Second Superseding Indictment was returned January 29, 1993 (Docket Entry No. 233).

4. The statute provides:

**§ 6002. Immunity generally**
Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to—
(1) a court or grand jury of the United States,
(2) an agency of the United States, or

S.Ct. 2235, 114 L.Ed.2d 477 (1991). The burden would be on the government to prove by a preponderance of the evidence that each piece of evidence it presented to the grand jury was "derived from a legitimate source wholly independent of the compelled testimony." *Kastigar,* 406 U.S. at 460, 92 S.Ct. at 1665, 32 L.Ed.2d at 226; *North,* 910 F.2d at 854; *see also Murphy v. Waterfront Comm'n of New York,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). This detailed inquiry is not necessary in this case, however.

At issue in *Kastigar* and its progeny was the scope of immunity conferred upon government witnesses testifying before a federal grand jury or other investigatory body. Most witnesses were granted statutory use immunity pursuant to 18 U.S.C. § 6002,[4] the Immunity of Witnesses Act. *See, e.g., Kastigar,* 406 U.S. at 442, 92 S.Ct. at 1655, 32 L.Ed.2d at 215; *North,* 910 F.2d at 851; *United States v. Gregory,* 730 F.2d 692, 696 (11th Cir.1984), *cert. denied,* 469 U.S. 1208, 105 S.Ct. 1170, 84 L.Ed.2d 321 (1985).

In order for a federal prosecutor to grant this type of immunity, he must receive approval from both the United States Attorney in the relevant judicial district, and from a high-ranking official in the Justice Department; the immunity grant must also be approved by a federal district judge. *See* 18 U.S.C. § 6003. This immunity assures a witness that his immunized testimony will be inadmissible in any future criminal proceeding, as will be any evidence obtained by prosecutors directly or indirectly as a result of the immunized testimony. 18 U.S.C. § 6002.

(3) either House of Congress, a joint committee of the two Houses, or a committee or a subcommittee of either House,
and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving false statement, or otherwise failing to comply with the order.
18 U.S.C. § 6002 (1985).

*United States v. Turner,* 936 F.2d 221, 223–24 (6th Cir.1991). In other cases, witnesses were granted statutory immunity under state law. *See, e.g., United States v. Hampton,* 775 F.2d 1479, 1480 (11th Cir.1985).

Mr. Brothers' immunity granted by the Northern District of Florida differs importantly from the types of immunity granted in the cases just cited.

### A. *Non–Statutory Immunity*

■ The Sixth Circuit's opinion in *United States v. Turner, supra,* is instructive on this point. Diane and Edwin Turner were convicted of drug trafficking and conspiracy charges. *Turner,* 936 F.2d at 222. On appeal, they challenged the district court's failure to hold a *Kastigar* hearing regarding the government's use of allegedly immunized testimony. *Id.* at 223. The Turners had been granted use immunity by the United States Attorney's office in the Southern District of Florida. This immunity did not bind other districts. *Id.* The language of the Sixth Circuit bears repeating at length:

> The "immunity" which the Turners were granted in the Southern District of Florida by the federal prosecutor is sometimes referred to as "pocket immunity." This informal immunity arises by way of assurances by prosecutors, either orally or by letter, to a potential grand jury witness that he will be immune from any prosecution based upon that testimony. Such decisions are made informally, outside the supervision of a court....
>
> Essentially, the "immunity" the Turners received in the Southern District of Florida was nothing more than a promise on the part of the federal prosecutor that they would not be charged in that district and that their testimony would not be disseminated to other government agencies. *Such promises are contractual in nature and do not bind other parties not privy to the original agreement. This is in contrast to a formal statutory grant of immunity....*
>
> ....
>
> The court was not required to hold a *Kastigar* hearing with regard to the "im-

munity" granted to the Turners by the federal prosecutor. The federal prosecutor does not have any authority to immunize testimony absent compliance with the requirements of the federal immunity statute [18 U.S.C. § 6002]. *He does, however, possess sole discretion in his particular district with respect to the decision to prosecute.* In this case, the Turners did not receive a federal statutory grant of immunity; instead they were promised that in exchange for their helpful testimony in a federal investigation, they would not be prosecuted in the Southern District of Florida and further, that their testimony would not be disseminated to other government agencies. Presumably, the Turners would have normal contractual remedies available to them if the federal prosecutor breached his promise. The Turners have not alleged that they were prosecuted in the Southern District of Florida nor do they contend that their testimony was disseminated to other government agencies.

*Id.* at 223–24 (emphasis added; citations omitted).[5]

Mr. Brothers' situation is analogous to that of the Turners. He was promised by Mr. McGee that he would not be prosecuted in or by the Northern District of Florida. This "pocket immunity" is valid in the Northern District of Florida; however, it cannot prevent prosecution by other government agencies. In fact, the cooperation agreement between Mr. Brothers and the Northern District of Florida specifically states that it does not bind any other parties not privy to the agreement. The promises of immunity made orally by Mr. McGee and confirmed in the cooperation agreement are not the same as statutory grants of immunity, and therefore, *Kastigar* is not implicated.

The cases cited by Mr. Brothers to the contrary are easily distinguishable. Specifically, Mr. Brothers quotes the Fourth Circuit's opinion in *United States v. Harvey,* 791 F.2d 294 (4th Cir.1986), for the proposition that "[i]mmunity agreements granted by a

---

5. *See also Rowe v. Griffin,* 676 F.2d 524, 527–28 (11th Cir.1982) (applying contract principles); *United States v. Marks,* 677 F.Supp. 1337, 1342

(E.D.Mich.1988) (same); *cf. United States v. Robison,* 924 F.2d 612, 613–14 (6th Cir.1991) (same regarding plea agreements).

United States Attorney are enforceable in all United States districts because 'the agreements reached are those of the Government.'" The citation is accurate, if somewhat out of context.[6] Put in full context, the Court stated (in the same paragraph quoted by Mr. Brothers) that:

> Whenever a United States Attorney negotiates and enters a plea agreement, it is the Government that "agrees" to whatever is agreed to. Of course the Government may—and quite readily can—"agree" through its agents that only certain of its agents are to be obligated in particular respects, or that the Government's obligation is limited territorially or temporally, or that the Government's obligation is otherwise qualified.

*Harvey*, 791 F.2d at 303.

Similarly, *United States v. Carter*, 454 F.2d 426 (4th Cir.1972), is cited for the proposition that a United States Attorney in one district can bind another district. In *Carter*, the defendant allegedly was promised that, in consideration for his cooperation in one district, he would not be prosecuted in any other districts for any crimes arising out of the same transactions. *Carter*, 454 F.2d at 427. The Court of Appeals remanded the case to the district court for an evidentiary hearing to determine if such a promise was made to the defendant. If so, and the defendant fulfilled his part of the bargain, any further prosecution of the defendant would be barred. *Id.* at 427–28.

The facts in the present case are in complete contradistinction from the allegations in *Carter*. Here, Mr. Brothers and the Northern District of Florida agreed that their "agreement specifically excludes and does not bind any other state or federal agency," and while the Northern District "will notify any relevant agency ... of the nature, extent and importance of Mr. Brothers cooperation.... [t]he [Northern District] cannot control the actions ... and can in no way guarantee the action of other agencies."

### B. *Use and Derivative Use of Information*

Mr. Brothers next contends that the government cannot use or make derivative use of any information garnered from him during the course of his cooperation. This restriction on the government arises under the *Kastigar* line of cases. However, as discussed above, those cases and their accompanying rationale is not applicable to the facts of this case. Rather, as Mr. Brothers himself argues, contract principles govern the agreements between the parties.

■ The cooperation agreement (or contract) between the Northern District of Florida and Mr. Brothers states that "all statements made by Mr. Brothers pursuant to this agreement will be treated as statements made pursuant to Rule 11 of the Federal Rules of Criminal Procedure." Rule 11 [7] "excludes from admissibility evidence of 'statements'. Moreover, it makes no reference to anything other than evidence of 'statements' as being excludable.... It is clear that Congress never considered including derivative evidence in the prohibition." *United States v. Rutkowski*, 814 F.2d 594, 599 (11th Cir.1987) *(per curiam)*; *United States v. Cusack*, 827 F.2d 696, 697–98 (11th Cir.1987) *(per curiam)*.

Similarly, the letter which established the ground rules for the proffer given by Mr. Brothers to the attorneys from the Middle District of Tennessee clearly states that "[t]he government may make full use of derivative information obtained as a result of

---

6. In *Harvey*, the Court determined that the terms of an ambiguous plea agreement should be interpreted against the government. *United States v. Harvey*, 791 F.2d 294, 303 (4th Cir.1986).

7. Rule 11 states, in relevant part:

    **(e) Plea Agreement Procedure.**

    **(6) Inadmissibility of Pleas, Plea Discussions, and Related Statements.** Except as otherwise provided in this paragraph, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:

    **(A)** a plea of guilty which was later withdrawn;

    **(B)** a plea of nolo contendere;

    **(C)** any statement made in the course of any proceedings under this rule regarding either of the foregoing pleas; or

    **(D)** any statement made in the course of plea discussions with any attorney for the government which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

    Fed.R.Crim.P. 11(e)(6) (1986).

the proffer.... Subject to the foregoing, nothing disclosed in the proffer will be used against [Mr. Brothers] in a criminal prosecution."

Mr. Brothers was represented by counsel during both his negotiations with the Northern District of Florida and the Middle District of Tennessee. His attorney, Stephen Johnson, signed both the cooperation agreement and the proffer letter. Mr. Brothers cannot now complain that he is being held to the terms of his bargains.

### III.

For the reasons discussed above, the Court denies Mr. Brothers' motion to dismiss the indictment based on his claims of breach of immunity and use of immunized information.

An appropriate order shall be entered.

### ORDER

In accordance with the memorandum contemporaneously entered, the defendant Russell Brothers' motion (filed December 21, 1992; Docket Entry No. 191) to dismiss the indictment based on the government's breach of an immunity agreement and alternatively, based on the use of evidence tainted by Russell Brothers' immunity is denied.

It is so ORDERED.