UNITED STATES of America

v.

James N. WOLCZIK.

Crim. A. No. 76–245.

United States District Court,
W. D. Pennsylvania.

Nov. 27, 1979.

**1206**

Thomas A. Daley, Asst. U.S. Atty., Pittsburgh, Pa., for plaintiff.

Dennis Unkovic and Thomas A. Berret, Meyer, Unkovic & Scott, Pittsburgh, Pa., for defendant.

OPINION

SNYDER, District Judge.

James N. Wolczik plead guilty to conspiring to forge endorsements on United States Savings Bonds. Wolczik moves under 28 U.S.C. § 2255 to vacate his conviction because the Government failed to provide him with allegedly exculpatory or favorable evidence prior to plea negotiations. The Motion will be denied.

## I. *The Background*

On August 24, 1976, Pittsburgh based Secret Service Agents arrested Carol Adams and John Martin, shortly after they attempted to cash stolen United States Savings Bonds. Their statements led to the arrest, later that day, of James N. Wolczik at his motel room and the recovery of approximately $25,000 in stolen bonds. A four count indictment handed down October 8, 1976 charged the Defendants Wolczik, Adams and Martin with conspiracy, receipt, possession and forgery of stolen United States Savings Bonds.

After Wolczik's arraignment on October 18, 1976, the United States Attorney met with Wolczik's attorney, and, in accordance with Local Rule No. 24,[1] provided the following documents: (1) FBI arrest record;

---

1. Rule 24 provides in pertinent part:
   "4. Pretrial Discovery and Inspection.
   (a) Within five (5) days after the arraignment the United States Attorney and the defendant's counsel shall confer and, upon request, the government shall:
   (1) Permit defendant's attorney to inspect and copy or photograph any relevant written or recorded statements or confessions made by the defendant, or copies thereof, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government.
   (2) Permit defendant's attorney to inspect and copy or photograph any relevant results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the case, or copies thereof, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known to the attorney for the government.
   (3) Permit defendant's attorney to inspect and copy or photograph any relevant recorded testimony of the defendant before a grand jury.
   (4) Permit defendant's attorney to inspect and copy or photograph books, papers, documents, tangible objects, buildings or places which is the property of the defendant and which are within the possession, custody or control of the government.
   (5) Permit defendant's attorney to inspect and copy or photograph the Federal Bureau of Investigation Identification Sheet indicating defendant's prior criminal record.
   (6) Permit defendant's attorney to inspect, copy or photograph any evidence favorable to the defendant.
   (b) If, in the judgment of the United States Attorney, it would not be in the interests of justice to make any one or more disclosures set forth in paragraph (a) and requested by defendant's counsel, disclosure may be declined. A declination of any requested disclosure shall be in writing, directed to defendant's counsel, and signed personally by the United States Attorney, and shall specify the types of disclosures that are declined. If the defendant seeks to challenge the declination, he shall proceed pursuant to subsection (c) below."

(2) one page statement by a Secret Service Agent regarding an alleged oral statement by Wolczik made on August 24, 1976; (3) handwriting report; and (4) fingerprint report.

The Government did not provide Wolczik's attorney with copies of written statements which had been given to Government Agents by Wolczik's co-conspirators after their arrests. Adams' statement, dated August 25, 1976, identified her co-conspirators as John Martin and James Wolczik. In a statement dated August 24, 1976, Martin identified his co-conspirators as Adams and a white male known to him as "Jimmy". In his second statement on August 30, 1976, Martin identified his co-conspirators as Adams and John Salvucci. He mentions James Wolczik, but does not indicate what role Wolczik had in the conspiracy. The statement indicates that Wolczik and Salvucci are two different people.

On October 18, 1976, Adams and Martin plead guilty to Count One of the indictment and the Government dropped Counts Two through Four. At the plea hearing, Adams again identified Martin and Wolczik as co-conspirators. Martin's attorney stated that Martin joined with Adams and an unindicted individual (identified at a side bar conference as "Salvucci") to cash stolen bonds in Pittsburgh. Martin did not mention what, if any, role Wolczik played in the conspiracy. It was clear from the hearing that both Adams and Martin were to be witnesses for the Government at the trial of any other defendants in this matter.

Wolczik's trial was scheduled for October 29, 1976, and Wolczik's counsel was to interview Martin prior to trial (a Petition for Writ of Habeas Corpus Ad Testificandum had been filed). However, before the interview could take place, a plea bargain was agreed upon which was identical to that offered co-conspirators Adams and Martin, whereby Wolczik was to plead guilty to the first count of conspiracy, 18 U.S.C. § 371 (for which the maximum sentence is five years imprisonment or a $10,000 fine, or both), and the three substantive counts of receiving and possessing stolen bonds, 18 U.S.C. §§ 641 and 2, were to be dismissed (each of these counts having a maximum sentence of 10 years imprisonment or $10,000 fine, or both). At his plea hearing on October 28, 1976, Wolczik admitted that he met Adams and Martin in Pittsburgh for the purpose of disposing of the bonds and that he had rented a motel room in which the stolen bonds were located. Wolczik's plea was accepted and he was later sentenced to five years imprisonment.

## II. *Discussion*

The Petitioner is collaterally attacking his conviction based upon a guilty plea. Our consideration of the Motion is governed by the Supreme Court's three companion cases, *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970), as elaborated upon in *Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).

In the aforementioned trilogy, the Supreme Court held that certain considerations which might have influenced a defendant's decision to plead guilty, *e. g.,* to avoid a death penalty later held unconstitutional, or mistakenly believing that a confession or certain evidence would be admissible when it was not, did not *per se* destroy the validity of the guilty plea.

In *Tollett,* the Supreme Court emphasized that even though a habeas petitioner alleges some deprivation of constitutional rights preceded his decision to plead guilty, the focus of the habeas inquiry is in the nature of the advice and the voluntariness of the plea, not the existence of an antecedent constitutional infirmity. The Supreme Court reaffirmed the principles recognized in the trilogy regarding the nature and effect of a guilty plea:

"[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims

relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.

A guilty plea, voluntarily and intelligently entered, may not be vacated because the defendant was not advised of every conceivable constitutional plea in abatement he might have to the charge, no matter how peripheral such a plea might be to the normal focus of counsel's inquiry. And just as it is not sufficient for the criminal defendant seeking to set aside such a plea to show that his counsel in retrospect may not have correctly appraised the constitutional significance of certain historical facts, *McMann, supra*, it is likewise not sufficient that he show that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings.

The principal value of counsel to the accused in a criminal prosecution often does not lie in counsel's ability to recite a list of possible defenses in the abstract, nor in his ability, if time permitted, to amass a large quantum of factual data and inform the defendant of it. Counsel's concern is the faithful representation of the interest of his client, and such representation frequently involves highly practical considerations as well as specialized knowledge of the law. Often the interests of the accused are not advanced by challenges that would only delay the inevitable date of prosecution, *see Brady v. United States, supra,* [397 U.S.] at 751–752 [90 S.Ct. 1463], 25 L.Ed.2d 747, or by contesting all guilt, *see Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). A prospect of plea bargaining, the expectation or hope of a lesser sentence, or the convincing nature of the evidence against the accused are considerations that might well suggest the advisability of a guilty plea without elaborate consideration of whether pleas

in abatement, such as unconstitutional grand jury selection procedures, might be factually supported."

411 U.S. at 267–68, 93 S.Ct. at 1608, 36 L.Ed.2d at 243–44.

The general rule of these cases, as stated by the Court of Appeals for the Third Circuit, is that:

"where a conviction is based upon a plea of guilty, the conviction is subject to federal collateral attack only on limited grounds. To invalidate his conviction the defendant must show that he did not make the plea knowingly, intelligently and voluntarily or upon a demonstration that the plea was not uttered with the assistance of counsel competent with respect to the law as it existed at the time of the conviction."

*United States v. Sams,* 521 F.2d 421, 424 (3rd Cir. 1975).

Here, Petitioner alleges that, prior to his guilty plea, the Government failed to provide him with favorable evidence which it had in its possession. The origins of the Government's duty to disclose its evidence to a defendant are found in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and the complementary provisions of Federal Rule of Criminal Procedure 16 and the Jencks Act, 18 U.S.C. § 3500.

The rule of *Brady v. Maryland, supra,* is that:

"the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

373 U.S. at 87, 83 S.Ct. at 1196–1197, 10 L.Ed.2d at 218.

F.R.Crim.P. 16 requires the Government upon request, to disclose during pretrial discovery certain information, specifically, statements of the defendant, the defendant's prior record, documents and tangible evidence within the Government's control which are to be used by the Government or which are material to the defense, and reports of examinations and tests.

However, statements made by witnesses or prospective witnesses for the Government are expressly exempted from the disclosure requirements of Rule 16, and are governed by the Jencks Act, 18 U.S.C. § 3500, which prohibits discovery of the witness' statements until the witness has testified at trial.[2] *See United States v. Kenny,* 462 F.2d 1205 (3rd Cir.), *cert. denied* 409 U.S. 914, 93 S.Ct. 233, 34 L.Ed.2d 176 (1972).

Although each of these discovery rules look primarily to a defendant's right to a fair trial, there are undoubtedly implications for the plea bargaining process. For example, the Advisory Committee Notes to F.R.Crim.P. 16 on the 1974 Amendments state:

> "The amendment making disclosure mandatory under the circumstances, prescribed . . . resolves such ambiguity as may currently exist, in the direction of more liberal discovery. . . . This is done in the view that broad discovery contributes to the fair and efficient administration of criminal justice by providing the defendant with enough information to make an informed decision as to plea; by minimizing the undesirable effect of surprise at the trial; and by otherwise contributing to an accurate determination of the issue of guilt or innocence." (Citations omitted)

Though numerous cases have dealt with the effect of the Government's suppression of allegedly discoverable or favorable material on a conviction based on a jury verdict of guilty, our research has disclosed only one case considering the effect of suppression of such evidence on a conviction based on a guilty plea, *Fambo v. Smith,* 433 F.Supp. 590, 597 (W.D.N.Y.1977), *aff'd* 565 F.2d 233 (2d Cir. 1977). In *Fambo,* the

defendant had been charged with two counts of possession of an explosive substance with intent to use it illegally—Count One for possession on November 29, 1970, and Count Two for possession on December 1, 1970. The defendant plead guilty to the December 1, 1970 possession and Count One was to be dropped. The prosecutor did not inform the defendant that between November 29, 1970 and December 1, 1970, police officers confiscated the explosive substance, without defendant's knowledge and replaced it with sawdust. This was clearly favorable evidence to the defendant since he could not be found guilty on the second count as charged. Nevertheless, the lower court, after examining the bargain closely, found the decision to plead guilty a voluntary and intelligent, if not properly informed, choice of the alternatives available. Particularly, the court noted that the petitioner did not allege that he did not get what he bargained for, *i. e.,* he avoided the possibility of a more severe sentence at trial and had multiple charges reduced to a single charge. The Court of Appeals for the Second Circuit affirmed. It found the District Attorney's conduct reprehensible, but noted that the petitioner did not dispute that he had the explosive substance in his possession at some earlier date, that there was a factual basis for the plea, and that the petitioner got what he bargained for.

In this case, we do not agree with Wolczik's argument that Martin's statement of August 30th, exonerated Wolczik. We recognize that in contrast to Martin's August 24th statement, in which he identified his Pittsburgh co-conspirators as Carol Adams and Jimmy, Martin's August 30th statement identifies his co-conspirators as Adams and John Salvucci. But far from exon-

---

2. Petitioner also relies upon Local Rule 24 of the Rules of Court for the United States District Court for the Western District of Pennsylvania, specifically Rule 24–4(a)(6), which extends pretrial discovery in criminal actions to any evidence favorable to the defendant. We reject the Petitioner's argument that the Local Rule extends to prior statements of prospective Government witnesses. Local Rule 24 is modeled after F.R.Crim.P. 16, which excludes such evidence from pretrial discovery. More impor-

tantly, F.R.Crim.P. 57 provides that rules made by the district courts are not to be inconsistent with the Federal Rules of Criminal Procedure, and as we noted, F.R.Crim.P. 16 expressly provides that discovery of prospective Government witnesses' statements is not authorized by the Rules of Criminal Procedure, but rather is governed by the Jencks Act. Thus we will read the Local Rule as not extending discovery to prior statements of prospective Government witnesses.

erating Wolczik, the second statement did not inculpate Wolczik.

Petitioner points to *Jones v. Jago,* 575 F.2d 1164 (6th Cir. 1978), in which the court stated that an eyewitness co-indictee's statement which made no reference to the presence of the defendant or his participation had to be viewed as a potentially powerful exculpation. At the very least, Wolczik contends, Martin's August 30th statement on the surface contradicted his August 24th statement. The statements together might have affected the credibility of Martin and would have to be timely disclosed to the defendant under the *Brady* rule. *See United States v. Dansker,* 565 F.2d 1262 (3rd Cir. 1977), *cert. dismissed* 434 U.S. 1052, 98 S.Ct. 905, 54 L.Ed.2d 805 (1978).

We do not believe, though, that classifying the evidence as "not exonerating", or merely "favorable or impeaching", or as "potentially powerful exculpation" furthers the analysis here. We believe that however we classify the statements made by Martin, the Government's failure to disclose them did not, under the circumstances in this case, affect the voluntary or intelligent nature of Wolczik's plea.

■ We have noted that prior statements of Government witnesses are not generally discoverable during pretrial in a criminal case and that defendants often must make decisions on whether to plead guilty without *all* the facts. First, the favorable evidence in this case was in the nature of prior statements of a prospective witness for the Government, discovery of which cannot, by the provisions of the Jencks Act, be compelled. If the evidence qualifies not only as *Jencks* material, but also as *Brady* material (as the evidence here arguably does), then disclosure of the evidence *may* be required before trial. *See United States v. Campagnuolo,* 592 F.2d 852 (5th Cir. 1979). It is clear, however, in our Circuit that:

"[t]he rule of *Brady v. Maryland* is founded on the constitutional requirement of a fair trial, binding on both state and federal courts. It is not a rule of discovery. . . . If exculpatory evidence can be effectively presented at trial and the defendant is not prevented by lack of time to make needed investigation, there is no reversible prosecutorial conduct in ill-timed presentation."

*United States v. Kaplan,* 554 F.2d 577 (3rd Cir. 1977). Thus, a defendant cannot expect to obtain *Brady* material for use in a pretrial decision to plead guilty.

■ Second, language from the Supreme Court's opinion in *Brady v. United States, supra,* though given in a different context, is relevant:

"Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted. Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time. The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action. More particularly, absent misrepresentation or other impermissible conduct by state agents, *cf. Von Moltke v. Gillies,* 332 U.S. 708, 68 S.Ct. 376, 92 L.Ed. 309, (1948), a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise. A plea of guilty triggered by the expectations of a competently counseled defendant that the State will have a strong case against him is not subject to later attack because the defendant's lawyer correctly advised him with respect to

the then existing law as to possible penalties but later pronouncements of the courts, as in this case, hold that the maximum penalty for the crime in question was less than was reasonably assumed at the time the plea was entered."

397 U.S. at 756–57, 90 S.Ct. at 1473, 25 L.Ed.2d at 761. *See also United States v. Kidding*, 560 F.2d 1303 (7th Cir.), *cert. denied* 434 U.S. 872, 98 S.Ct. 217, 54 L.Ed.2d 151 (1977) (defendant cannot claim as a substantial right that the Government must reveal to him all inculpatory evidence so that he may know exactly how strong the case is against him and thereby decide whether to plea bargain with the prosecutor). Implicit in these decisions is the realization that a guilty plea can be valid although the defendant did not have all of the facts.

■ We believe that prior to pleading guilty, a defendant is entitled, upon request, to the Government's evidence discoverable under the Federal Rules of Criminal Procedure. However, while a defendant's guilty plea must, to be valid, be intelligently made, we are reluctant to impose additional discovery burdens on the Government, i. e., disclosing all *Brady* material, as a prerequisite for its entering plea negotiations. At the same time, we believe that the Government cannot be permitted to intentionally misrepresent its case to the defendant to insure a guilty plea. Obviously, then, only a case by case approach can be used, and the facts in this case lead us to the conclusion that the guilty plea is valid.

Wolczik was arrested at the Holiday Inn in possession of the stolen bonds. Agents were led to the motel room through the statements of Wolczik's co-defendants, Adams and Martin. The affidavit for the search warrant was a matter of record and Wolczik's counsel admits that he was aware of its contents. After Wolczik's arraignment, the United States Attorney provided his counsel with all the material required under F.R.Crim.P. 16, including a Secret Service Agent's statement regarding Wolczik's statement locating the stolen bonds in the motel room. Following the guilty pleas of Wolczik's co-defendants Adams and Martin, it was, or should have been, apparent to Wolczik's counsel that Adams and Martin were potential Government witnesses. While Wolczik's counsel did not know of Martin's August 30th statement implicating John Salvucci in the conspiracy (and not mentioning Wolczik), the proceedings on Martin's guilty plea were similar in effect to the statement—Martin implicated a "Salvucci" and did not mention Wolczik. Furthermore, Wolczik's counsel intended to interview Martin prior to trial and had filed a Petition for Writ of Habeas Corpus Ad Testificandum. At the change of plea hearing, Wolczik admitted that he was in Pittsburgh with Adams and Martin to dispose of the stolen bonds, and he does not now deny he knew or acted with Martin.

The Government did not conceal physical evidence which could have exonerated Wolczik; nor did it conceal the identity of a witness whose testimony could have exonerated Wolczik; nor did it conceal a retraction by a prospective witness for the Government of an incriminating or inculpatory statement. Even where a Government witness retracts such a statement, the Government's failure to disclose may not be prejudicial when defense counsel has the opportunity to interview the witness. *See United States v. Enright*, 579 F.2d 980 (6th Cir. 1978). Furthermore, we have difficulty finding anything was concealed in light of the proceedings in which Martin plead guilty.

Counsel for Wolczik might have waited until he interviewed Government witnesses, including Martin, before recommending a plea of guilty, but possibly for a myriad of reasons decided a prompt plea was in Wolczik's best interests. Wolczik's unexplained possession of the stolen bonds alone made the Government's case against him a strong one. By pleading guilty, the Petitioner avoided the possibility of a more severe sentence at trial and also gained the advantage of having multiple charges dropped in favor of his plea to a single count. *See Fambo v. Smith, supra.* He does not contend that the provisions of the plea bargain were not lived up to.

We find that Wolczik and his counsel had sufficient information to make an intelligent decision on whether to plead guilty and that the guilty plea was voluntarily made.

Finally, the plea must be given with the assistance of competent counsel. *See McMann v. Richardson, supra.* In the Third Circuit, the standard for the adequacy of legal services was articulated in *Moore v. United States,* 432 F.2d 730 (3rd Cir. 1970), recently reaffirmed in *United States v. Palumbo,* 608 F.2d 529 (3rd Cir. 1979), as "the exercise of the customary skill and knowledge which normally prevails at the time and place." This Petitioner has not raised the issue and we find no evidence that counsel did not meet this level of competency. Wolczik's Motion under 28 U.S.C. § 2255 will therefore be denied.[3]

An appropriate Order will be entered.

---

**3.** There is no need for an evidentiary hearing because the Motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. 28 U.S.C. § 2255; *United States v. Campisi,* 583 F.2d 692 (3rd Cir. 1978).