UNITED STATES of America

v.

Joseph PUMA, Defendant.

No. CR–81–00318.

United States District Court,
E. D. New York.

Aug. 24, 1981.

Edward R. Korman, U. S. Atty., E. D. New York, Thomas P. Puccio, Brooklyn, N. Y., Attorney-in-Charge Organized Crime Strike Force, by Douglas Eric Grover, Sp. Atty., Brooklyn, N. Y., for United States of America.

Caesar Cirigliano, Federal Defender Services Unit, by Louis M. Freeman, Brooklyn, N. Y., for defendant.

## MEMORANDUM AND ORDER

SIFTON, District Judge.

Defendant has moved to dismiss the indictment in this case, which charges him with the receipt in the period July through December 1976 of 550 boxes of Haviland china said to have been stolen from a shipment originating in Limoges, France, and destined for New York. The grounds for the motion are (1) that the Government has, in connection with this case, violated a previous plea agreement pursuant to which the defendant pleaded guilty in 1978 to receipt of cosmetics stolen from an interstate shipment in 1977; and (2) that the delay from December 1976 to August 1981 in indicting the defendant for receiving the stolen china violates his fifth amendment right of due

process. For the reasons set forth below, defendant's motion must be granted on the first ground urged.

In December 1977 the defendant was arrested, along with five others, and charged in a complaint with possession of a large quantity of cosmetics alleged to have been stolen from an interstate shipment. The FBI agent placed in charge of the case was Ronald W. Kosednar, who was assigned at the time to the hijacking unit of the Manhattan office of the FBI. After the arrest and arraignment of the defendants, on December 27, 1977, Kosednar prepared and submitted an "Indices Search Slip" to the New York FBI regional office central files to determine if any of the persons arrested, including Puma, were the subject of any other active FBI investigations.

The indices search slip was returned to Agent Kosednar in early January 1981. With respect to defendant Puma the report indicated that Puma was under investigation in connection with a number of other cases involving property stolen from interstate shipment. One of those cases was the theft of china which forms the basis for the indictment in the present case.

Agent Kosednar requested and examined the files with regard to the other active cases involving the defendant listed in the indices check report to determine if the files in fact related to Puma, indicating that he had done so by placing a letter "I" next to the number of the files he requested and examined and determined to involve the identical person. For reasons that the agent was unable to explain at the hearing held on the instant motion, no mark was made next to the file with regard to the theft of the Haviland china, and the agent was unable to recall whether or not he requested and examined the FBI's file with regard to that theft or not.[1]

No indictment in connection with the cosmetics theft was filed until the summer of 1978. Hearings with regard to suppression motions were thereafter conducted before the undersigned on September 28 and 29 of that year. Prior to and during the course of these hearings, plea discussions were held, without the Court's participation, between counsel for defendant Puma, Mark Landsman, and counsel for the Government, Assistant United States Attorney Michael Soroka. According to the testimony of both participants at the hearing, Mr. Landsman's primary concerns were (1) to secure an agreement that, in return for his client's plea to a charge of conspiracy to possess stolen property, his client would not be prosecuted in connection with the underlying theft of the cosmetics, and (2) to determine that there were no other active FBI investigations of Puma for possession of stolen property.

In connection with the first of Landsman's two objectives, Soroka agreed to determine if Puma would be prosecuted for any involvement in the theft of the cosmetics which were the subject of the pending charges. In connection with Landsman's second objective, Soroka asked either Kosednar or another agent assigned to the case, Patrick F. Colgan, whether there were any current investigations pending against Puma. In response Soroka was told by Kosednar that there were none. In fact, the investigation of Puma in connection with the china theft was still open and active on the FBI's central indices files and remained so until the indictment in this case.

This flat misstatement was, I find, inadvertent. Rather than checking the central indices file or even his own case file which contained the results of the December 27, 1977 inquiry, Agent Kosednar simply relied on his own general awareness of the active cases being handled by himself and others in his unit of the Manhattan office of the FBI. Unfortunately, the case involving Puma's possession of the Haviland china had originated in the New Rochelle office of the FBI and was being conducted with unusual precautions because of the involve-

1. The agent did testify to a vague recollection of hearing of Puma's involvement in the china case at about this time, although he could not testify whether this occurred before or after Puma's plea in connection with the cosmetics case.

ment of a confidential informant, Joseph Cantalupo. In all events, the Assistant United States Attorney thereafter entered into an agreement with defense counsel that Puma would not be prosecuted for the cosmetics theft and that there were no other pending investigations of him for receiving stolen property. In return, Puma agreed to plead guilty to conspiracy to receive the stolen cosmetics.

Thereafter, at the time of plea, in response to the undersigned's question: "What is the nature of the agreement between defendant and the Government which has led to this plea?", the Assistant United States Attorney Soroka made the following statement, *inter alia*:

> "In addition, I will represent to the Court and to the defendants and their counsel that there is no current investigation of which I am aware with regard to any of these defendants concerning the theft of any other items from interstate shipment."

Puma then entered a plea of guilty to a charge of conspiracy to possess the stolen cosmetics and on December 1, 1978, was sentenced by the undersigned to three years' imprisonment. He was released from this sentence in August 1980, after serving 19 months.

Nine months after his release, in May 1981, defendant was arraigned on the present indictment. The Government explains this delay as having been occasioned by a need to protect the informant's confidentiality; by the commitments of the informant, Joseph Cantalupo, whose evidence is said to be necessary to establish defendant's guilt in this case, to the prosecution of other, more pressing cases; and by the commitment of the Special Attorney for the Organized Crime Strike Force, to whom all cases involving Cantalupo were assigned, to other, more serious investigations and trials.

## DISCUSSION

■ I find no basis for dismissal of the indictment in this case for prosecutorial de-

lay, even though it is undisputed that the indictment was filed on the eve of the expiration of the statute of limitations. There is no basis in the record, other than speculation, for concluding that, in this case, the Government "intentionally delayed to gain some tactical advantage ... or to harass." *United States v. Marion*, 404 U.S. 307, 325, 92 S.Ct. 455, 466, 30 L.Ed.2d 468 (1971). On the contrary, the undisputed evidence submitted in connection with the motion, including the evidence submitted at the hearing, indicates that the delay in prosecuting this case results entirely from the commitments of the Government lawyer assigned to this case and the informant, to the informant's safety, and then to the prosecution of other, more serious crimes.

Defendant does not dispute the Government characterization of other cases in which the informant and the Government's lawyer were engaged as more deserving of attention from law enforcement than his own. Accordingly, even if defendant's showing of prejudice were more weighty than it is, the reasons for delay are not such as to warrant relief under the due process clause. *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *United States v. Lai Ming Tanu*, 589 F.2d 82, 89 (2d Cir. 1978); *United States v. Elsbery*, 602 F.2d 1054 (2d Cir. 1979).

Defendant's claim of prejudice is essentially that he has lost the possibility of receiving concurrent sentences for the offense involving the china and the offense involving the cosmetics and that his 1978 conviction may now be considered by the Court at a sentencing on the present offense.

However, this Court can take into account the circumstances which are being urged on this motion in determining an appropriate sentence on the china case, including the delay in prosecution and the sentence recently completed with respect to cosmetics.[2]

---

**2.** Defendant's argument that he was prejudiced by reason of the fact that the two cases were

not tried in chronological order, because he is now open to impeachment by reason of his

I find, however, that the Government did, in connection with the present case, violate the obligations it assumed in connection with Puma's plea in 1978. Moreover, since it appears the only appropriate remedy available, I conclude that this violation requires dismissal of the present indictment.

The Government makes two arguments against dismissal of the present indictment. First, it argues that Soroka's statement was limited to a representation with respect to his personal awareness of other pending investigations and that this representation has not been proved inaccurate. Secondly, the Government argues that Soroka's statement is not by its terms an agreement, much less an agreement of immunity.

Analysis of the issues raised must start with *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). As stated in that case:

> "The disposition of the criminal charges by agreement between the prosecutor and the accused, sometimes loosely called 'plea bargaining,' is an essential component of the administration of justice. Properly administered, it must be encouraged.
>
>     *   *   *   *   *   *
>
> "[However, t]his phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances." *Id.* at 260, 262, 92 S.Ct. at 498, 499.

And *see Palermo v. Warden*, 545 F.2d 286, 295 (2d Cir. 1976).

At least one court has thought it appropriate to analyze the type of problem presented by this case, involving considerations of essential fairness, in terms of the prosecutor's obligations as described in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its successors. *See, e. g., Correale v. United States*, 479 F.2d 944, 947 n.3 (1st Cir. 1973); *see also Fambo v. Smith*, 433 F.Supp. 590, 591 (W.D. N.Y.), *aff'd*, 565 F.2d 233 (2d Cir. 1977); and *United States v. Wolczik*, 480 F.Supp. 1205, 1209 (W.D.Pa.1979). Under such an analysis the information that the FBI had another pending investigation against Puma falls within the second category of information described in *United States v. Agurs*, 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976), since it was specifically requested by the defendant and was material to the determination of Puma's guilt or innocence, providing the principal consideration in determining Puma to forego his rights to trial and plead guilty. The fact that the Assistant United States Attorney limited his representation to his own knowledge is, on this analysis, of no significance since the duty of disclosure under *Brady* extends not simply to the individual prosecutor but to all persons working as part of the prosecution team or intimately connected with the Government's case, even if not employed in the prosecutor's office. *United States v. Morell*, 524 F.2d 550, 555 (2d Cir. 1975); *United States v. Butler*, 567 F.2d 885 (9th Cir. 1978); *United States v. Deutsch*, 475 F.2d 55 (5th Cir. 1973). Nor is it significant under this analysis that the Assistant did not express himself in terms of agreement in making his representation to Court and counsel.[3]

However, whether this case is analyzed in terms of the prosecutor's *Brady* obligation

---

earlier conviction, ignores the fact that the Government might well have chosen to try the cosmetics case first, in which defendant was caught red-handed, even if the indictment on the china case had been filed earlier.

3. Analysis of the situation here presented in terms of a prosecutor's *Brady* obligations appears sensible since it leaves it within the power of the prosecutor to control the materiality of the information sought to be learned by the defendant by declining to furnish the information requested as a condition of the plea (as-

suming it is not otherwise exculpatory), for example, because of the difficulty of obtaining it or insuring its accuracy and completeness. If the defendant is told that he will not be furnished the information sought and that he will have to make up his mind whether to plead guilty without the benefit of that information, then the defendant is in no position to claim (unless the information is otherwise exculpatory) that the information was material to his decision to plead guilty.

or in terms of contract law, the result in this case is the same. The difficulty with the Government's argument that there was no promise or agreement and with its further argument that the representation made by defendant was literally accurate is that they both assume that Soroka's statement is all that is relied upon by the defendant to establish the agreement's existence and its terms. Clearly, the Government lawyer's statement on the record at the time of plea was not the agreement itself in connection with which it was mentioned. Nor did the statement constitute the performance called for by the agreement.[4]

What the testimony of the participants in the negotiations and agreement establishes is that the attorneys agreed that Puma would plead guilty to conspiracy on condition that he receive immunity with regard to the underlying theft of cosmetics and on the condition that there were no other open investigations against him.[5] The Government lawyers' statement at the hearing was thus not itself performance of the agreement or itself a fulfillment of the condition called for by the agreement, but simply an assurance that the condition had been fulfilled.[6]

Accordingly, it is clear that in this case, unlike *United States v. Papa*, 533 F.2d 815 (2d Cir. 1976), and *United States v. Alessi*, 544 F.2d 1139 (2d Cir. 1976), the terms of the plea agreement have, in fact, been violated. Moreover, the fact "that the breach was inadvertent does not lessen its impact." *Santobello v. New York, supra*, 404 U.S. at 262, 92 S.Ct. at 499; and *see Correale v. United States*, 479 F.2d 944, 947 (1st Cir. 1973); *Palermo v. Warden, supra* at 296.

---

4. Although the Assistant's statement would appear on its face the kind of representation called for by an earlier agreement to be made at the consummation or closing of the transaction, it is apparent that the form of the statement was entirely of the Assistant's own choosing and not called for by any underlying agreement with defense counsel. The bargain struck was not, in other words, a bargain for an investigation and representation by the Government attorney as to the investigation's results, but rather, an agreement as to a condition for the plea: that there were no other open investigations against the defendant. Clearly, defense counsel would have little interest in the representation of an individual Government lawyer. From the standpoint of the Assistant United States Attorney, he does not appear to have regarded the inquiry as a difficult one to respond to definitively, so as to require negotiations with regard to the extent of the inquiry and limits on the representation. Finally, nothing in the evidence with regard to the negotiations for the plea suggests that either the Government lawyer or defense counsel agreed that the Government's obligations would be limited to a representation that the prosecutor in charge of the case knew of no other pending cases much less that he would make only reasonable inquiry to determine the facts.

5. Both sides note that such a condition was considered reasonable because of the acknowledged involvement of a confidential informant in the cosmetics case who had been close enough to Puma to relate to the FBI the almost day-to-day movement of the stolen cosmetics. Given this knowledge that the source of information was someone with reasonable access to

Puma, defense counsel and his client were understandably concerned that the informant might be the source of other information concerning Puma which the Government would be in a position to prosecute in the event it was dissatisfied with the sentencing imposed in the cosmetics case. The Government has acknowledged, however, in argument on this motion, that nothing in the evidence suggests that any agreement entered into by the parties, or inquiry made by defense counsel of the Government lawyer, or by the Government lawyer of the FBI was limited to cases in which the same informant was involved. Thus, it is unnecessary to determine whether, as the Government contends, Cantalupo was not the informant in the cosmetics case.

6. Even if the agreement was interpreted as a covenant that everything reasonable would be done to determine whether there was an ongoing investigation rather than, as I find to be the case, an unqualified commitment to determine whether that was the case, even that limited agreement was not lived up to. Certainly, the FBI agent acted unreasonably in failing to look in his own files for the results of his routine indices check, if not in failing to request a current update. Nor was it reasonable for the Assistant United States Attorney to fail to inquire of the agent as to the basis for his statement that there were no other investigations. Had he made such an inquiry, he would have discovered and presumably taken steps to expand the extremely casual inquiry on which the agent's answer was based.

Nor is there any question that defendant has performed his part of the bargain by pleading guilty and serving his sentence. *Cf. United States v. Boulier*, 359 F.Supp. 165, *aff'd sub nom. United States v. Nathan*, 476 F.2d 456 (2d Cir.), *cert. denied*, 414 U.S. 823, 94 S.Ct. 171, 38 L.Ed.2d 56 (1973).

The fact that the Government's agreement was not an agreement to confer immunity simply means that the question whether dismissal of the indictment is appropriate must be considered separately from the question whether a breach of the agreement has occurred. Had the breach been discovered earlier, other remedies, including withdrawal of Puma's plea in the cosmetics case, could have been considered. In the circumstances here presented, however, in which Puma has not only pleaded guilty but served his sentence, dismissal of the indictment appears the only meaningful relief. *Palermo v. Warden, supra* at 296; *Correale v. United States, supra* at 949.

Accordingly, the Clerk is directed to enter judgment dismissing the indictment and to mail a copy of the within to the attorneys for both sides.

SO ORDERED.