UNITED STATES of America,

v.

Ivan T. PRESLAR, II, a/k/a Ivan T. Pres-
lar, Timberline Stoves Northeast, Inc.,
Robert M. Weichert, Adirondack Wood
Stove Works, Inc., Timberline East, De-
fendants.

No. 84–CR–139.

United States District Court,
N.D. New York.

April 17, 1985.

Frederick J. Scullin, Jr., U.S. Atty., N.D.
N.Y., Syracuse, N.Y., for U.S.; William H.
Pease, Asst. U.S. Atty., Syracuse, N.Y., of
counsel.

DeFrancisco, Menkin & Brunetti, Syra-
cuse, N.Y. for defendant Ivan T. Preslar;

John A. DeFrancisco, Syracuse, N.Y., of counsel.

Emil M. Rossi, Syracuse, N.Y., for defendant Robert M. Weichert.

## MEMORANDUM–DECISION AND ORDER

MUNSON, Chief Judge.

On October 19, 1984, a federal grand jury returned a seven count indictment against the above-named defendants, charging them variously with bankruptcy fraud and related offenses in violation of 18 U.S.C. § 152. More specifically, the Government alleges that defendants Preslar and Weichert engaged in a criminal conspiracy to conceal the assets of a bankrupt corporation by transferring its inventory, cash and other property to a separate and distinct solvent corporation. All of the overt acts contained in the indictment are alleged to have occurred between August 1, 1981 and October 1, 1981.

Presently before the court are motions by both defendants to dismiss the indictment on the ground that their prosecution is barred by the Government's constitutionally impermissible delay in bringing the instant charges. *See* Rule 12, Fed.R. Crim.P. Additionally, defendant Preslar has moved pursuant to Rule 12 to dismiss the indictment "in the interests of justice" on the ground that his prosecution by the Government violates an express plea agreement between the defendant and the United States Attorney's Office. In the alternative, defendant Preslar seeks suppression of any and all evidence disclosed to the Government pursuant to the alleged plea arrangement, on the grounds of "coercion, deceit and fraud" on the part of the United States Attorney. *See* Rules 12 and 41(f), Fed.R.Crim.P. Finally, in the event that this court finds that defendant Preslar was an agent of the Government and that he acted in accordance with the terms of an express plea agreement, defendant Weichert seeks suppression of any and all evidence obtained as a result thereof in violation of his right to counsel guaranteed under the sixth amendment to the Constitution of the United States.[1]

An evidentiary hearing was held to resolve the factual issues raised by the present motions on February 8 and 11, 1985. After considering the record, the testimony and demeanor of the witnesses, the exhibits, the arguments of the parties and the applicable law, the court hereby denies the defendants' motion to dismiss for impermissible pre-indictment delay. However, based upon the totality of circumstances concerning the conduct of the United States Attorney's Office vis-a-vis defendant Preslar, the court finds that: (1) an express plea agreement existed effective December 1, 1981; (2) that the present indictment is wholly inconsistent with said agreement; and, accordingly, (3) that the only remedy available is dismissal of the present indictment against defendant Preslar.[2] This disposition has no effect on the indictment as it relates to defendant Weichert. Additionally, the court finds no factual support for Weichert's claim that his sixth amendment right to counsel was violated and accordingly his motion to suppress is denied.

[1]. During the hearing conducted in this case, defendant Weichert orally moved to dismiss the indictment or alternatively for suppression for the alleged failure of the United States to notify the defendant that he was a "target" of an ongoing criminal investigation prior to subpoenaing him before a federal grand jury in 1982. In its post-hearing submission, the Government has asserted that the defendant has no right to raise this issue at the present time as no notice that this question would be explored was given prior to the hearing. Counsel for the defendant concedes that the issue was not raised in the defendant's moving papers but argues that "all parties nevertheless had a full and fair opportunity" to litigate the question at the hearing. The court agrees with the Government that it is entitled to a full and fair opportunity to examine witnesses and to develop facts relevant to this question. The defendant's motion is thus denied without prejudice and with leave to renew.

[2]. Based upon this disposition, the court need not address defendant Preslar's motion to suppress.

## I. Pre-indictment delay

■ It is well established that a defendant's primary protection against having to face stale criminal charges is the applicable statute of limitations. *United States v. Marion*, 404 U.S. 307, 322–323, 92 S.Ct. 455, 464–465, 30 L.Ed.2d 468 (1971); *United States v. Vispi*, 545 F.2d 328, 331 (2d Cir.1976). It is, however, equally well established that the due process clause of the fifth amendment does have a limited role to play in protecting against pre-indictment delay that violates "fundamental conceptions" of justice. *See e.g., United States v. Lovasco*, 431 U.S. 783, 790, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977). Such a due process violation is established only if a defendant is able to demonstrate that the pre-indictment delay caused substantial prejudice to his right to a fair trial and that such delay was the result of improper conduct on the part of the Government. *See United States v. Marion*, 404 U.S. at 324, 92 S.Ct. at 465; *United States v. Tana*, 589 F.2d 82, 87 (2d Cir.1978); *United States v. Mejias*, 552 F.2d 435, 443 (2d Cir.), *cert. denied*, 434 U.S. 847, 98 S.Ct. 154, 54 L.Ed.2d 115 (1977). Moreover, the burden of establishing these necessary elements rests with the defendant; proof of such harm must be definite rather than speculative. *United States v. Swacker*, 628 F.2d 1250, 1254 (9th Cir.1980); *United States v. Elsbery*, 602 F.2d 1054, 1059 (2d Cir.), *cert. denied*, 444 U.S. 994, 100 S.Ct. 529, 62 L.Ed.2d 425 (1979).

■ In the present case the court concludes that both defendants have failed to establish that this prosecution will violate these fundamental conceptions of justice. The defendants have simply failed to come forward with any evidence tending to show actual prejudice or proof that the pre-indictment delay was an intentional stratagem designed to give the Government a tactical advantage.

■ Defendant Preslar, the only witness at the hearing who testified regarding pre-indictment delay, stated that by virtue of almost four years having passed since the occurrence of the acts alleged in the indictment, he has been severely prejudiced in that "his memory has severely faded." He claims that substantial prejudice has been shown because the memories of "material witnesses" who might aid the defense in this case are similarly diminished. The law is clear, however, that a showing that memories have dimmed because of passage of time does not establish substantial prejudice giving rise to a due process violation. *See e.g., United States v. Snyder*, 668 F.2d 686, 689 (2d Cir.1982); *see also United States v. Ruggiero*, 726 F.2d 913, 925 (2d Cir.1984). Moreover, the defendants' bald assertions regarding diminished memories of potential witnesses are wholly speculative and, thus, fall short of the proof of actual prejudice required by *Marion*.

The defendants' claim of actual prejudice resulting from the unavailability of certain "material" witnesses is similarly without foundation. Although defendant Preslar testified in the abstract that some of these potential witnesses might give exculpatory testimony tending to legitimize the allegedly unlawful transactions referred to in the indictment, he failed to offer any specific factual information to substantiate this claim. Additionally, the defendants failed to establish that such information is not otherwise available. Finally, the defendants have also failed to show that these witnesses are in fact "unavailable". Thus, no actual prejudice has been established sufficient to warrant a finding of impermissible pre-indictment delay. *United States v. Marion*, 404 U.S. at 324, 92 S.Ct. at 465.

Because the defendants have failed to show either actual prejudice to the conduct of their defense, or that the Government intentionally delayed to gain some tactical advantage in the case, the defendants' motion to dismiss on the basis of pre-indictment delay must be denied.

## II. The Alleged Plea Agreement
### A. The Contention of the Parties

■ Defendant Preslar claims that the present indictment must be dismissed

against him "in the interests of justice" because the Government has breached a prior plea arrangement wherein the defendant agreed to cooperate in an ongoing bankruptcy fraud investigation. In exchange for such cooperation, which included assisting the Government in gathering incriminating evidence against defendant Weichert and turning over voluminous corporate records, Preslar alleges that the Government promised him that he would be permitted to plead guilty to one count of bankruptcy fraud with a maximum sentence of five years imprisonment. Preslar further alleges that the sentence was to run concurrently with his state court sentence of the same length. Preslar also claims that the Government agreed to secure that his sentence would be served in a Federal, as opposed to a State, correctional facility.[3]

Pursuant to the terms of the plea arrangement defendant contends that he properly turned over to the United States Attorney's Office "all of his books, records and other papers" relative to the ongoing criminal investigation of the target corporations. Preslar further alleges that he disclosed to representatives of the United States Attorney's office and the Federal Bureau of Investigation additional information highly incriminating to himself, defendant Weichert and the target corporations. The defendant claims that he fully complied with the terms of the plea arrangement and that it violates conceptions of fundamental fairness to allow the Government to now renege on its promises. Specifically, the defendant claims that he has already completed serving his extensive state court sentence and he should not now have to face federal charges which, had the Government complied with the terms of the plea agreement, would already have been resolved.

Throughout this proceeding the Government has contended that either (1) no express plea agreement was ever reached, or

(2) the agreement was expressly contingent upon the defendant's full, truthful and complete cooperation. The Government alleges that such cooperation was never fully given by the defendant. Additionally, the Government claims that the documentary evidence surrendered by the defendant constitutes corporate business records which were in no way constitutionally privileged and which could have been obtained by grand jury subpoena. The Government thus argues that the defendant has not been prejudiced by disclosing this information.

B. *The Standard for Dismissal*

The controversy before the court falls within "the broad category of cases of which *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), is the most prominent, i.e., those in which [a] defendant [has] sought to hold the Government to promises made during the course of plea negotiations which precede the institution of prosecution." *United States v. Lieber,* 473 F.Supp. 884, 890 (E.D.N.Y. 1979). In *Santobello,* the Supreme Court ennunciated the general rule that:

> The disposition of ... criminal charges by agreement between [a] prosecutor and the accused, sometimes loosely called 'plea bargaining,' is an essential component of the administration of justice. Properly administered, it must be encouraged. [However], [t]his phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances.

*Id.* 404 U.S. at 260, 92 S.Ct. at 497; *see also United States v. Puma,* 521 F.Supp. 258 (E.D.N.Y.1981); *Palermo v. Warden,* 545 F.2d 286, 295 (2d Cir.1976). The court in *Santobello* specifically recognized the power of a trial court to either dismiss an indictment for a breach of such agreement

---

**3.** On March 30, 1985 Preslar was released from custody at the Auburn Correctional Facility, having completed his State court imposed term of incarceration. Preslar pleaded guilty in 1981 to a single count of assault in the second degree and received a sentence of three and one-half years.

or to order specific performance of the agreement. The rationale for according such extraordinary relief is that the Government "should not be allowed simply to renege in its promises." *See United States v. Carter*, 454 F.2d 426 (4th Cir. 1972) (en banc); *Mabry v. Johnson*, — U.S. —, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984); *United States v. Lieber*, 473 F.Supp. at 894–95.

It should be noted, however, that while most of the cases in this area arise in the context of a defendant *actually* pleading guilty to a specific charge upon the Government's promise "to take or not take" some course of action, *United States v. Lieber, supra*, 473 F.Supp. at 894, other courts, by analogy, have imposed similar remedies where the Government violates the terms of express promises made in connection with the *negotiation* of plea arrangements. *See e.g., United States v. Lieber*, 473 F.Supp. at 890; *United States v. Carter*, 454 F.2d at 426. Such is the situation in the instant case.

The general principles that have been developed in this area were aptly stated in *Carter:*

> [W]e conclude that if [a] promise was made to defendant [by the Government] ... and defendant relied upon it in incriminating himself ..., the Government should be held to abide by its terms.... [Moreover], 'if, after having utilized its discretion to strike bargains with potential defendants, the Government seeks to avoid these arrangements by using the courts, its decision so to do will come under scrutiny. *If it further appears that the defendant, to his prejudice, performed his part of the agreement while the Government did not, the indictment may be dismissed.'*

454 F.2d at 427–428, *quoting United States v. Paiva*, 294 F.Supp. 742, 747 (D.D. C.1969) (emphasis added). Similarly, in *Palermo v. Warden, Green Haven State Prison*, 545 F.2d 286 (2d Cir.1976), *cert. denied*, 431 U.S. 911, 97 S.Ct. 2166, 53 L.Ed.2d 221 (1977), the Second Circuit flatly stated that "*Santobello* requires relief where the prosecutor fails to fulfill promises within his power made in negotiating a plea bargain." *Id.* at 295. Thus, absent compelling mitigating circumstances, "[w]hen the United States Government gives its word ... to [make] an agreement with one of its citizens, the Government must be held to that agreement and [must] keep its promises." *United States v. Phillips Petroleum Co.*, 435 F.Supp. 662, 640 (N.D.Okl.1977).

## C. The Evidentiary Hearing

The evidentiary hearing conducted in this case clearly established that an express agreement was reached and that the Government, by bringing the present indictment against defendant Preslar, has breached that agreement.

Defendant Preslar testified that in November of 1981 his then attorney, John S. Kenny, advised him that he had been contacted by representatives of the United States Attorney's Office regarding an ongoing criminal investigation into an alleged bankruptcy fraud implicating the defendant. On the advice of counsel, Preslar agreed to meet with the Government to discuss the pendency of the investigation and the defendant's possible cooperation in furthering the investigation. On December 1, 1981, representatives of the Government, including Assistant U.S. Attorney Joseph A. Pavone and then Assistant U.S. Attorney Gregory A. West, met with Mr. Kenny and Preslar to discuss the ongoing criminal investigation. Preslar testified that during this meeting Mr. West proposed that in return for the defendant's substantial cooperation in the investigation of defendant Weichert and the Timberline Energy Corporation, he would be permitted to plead guilty to a one-count indictment for bankruptcy fraud with a maximum sentence of five years, such sentence to run concurrently with whatever state court sentence the defendant would receive on his unrelated state charge. Additionally, Preslar testified that the Government agreed to attempt to arrange that his sentence be served in a Federal, as opposed to a State, correctional facility.

Mr. Kenny fully corroborated this testimony. He testified that his understanding of the agreement was that in exchange for providing the Government with testimony and documentary evidence tending to implicate defendant Weichert, Preslar would be allowed to plead guilty to one count of bankruptcy fraud with a maximum penalty exposure of five years. He further indicated that he advised his client to accept the "deal", and, to the best of his knowledge, the defendant fully complied with the terms of the agreement.

Mr. Kenny specifically noted that defendant Preslar fully revealed the terms of the alleged bankruptcy fraud and also produced all relevant corporate records tending to implicate the target corporations. Mr. Kenny indicated that to the best of his recollection, Preslar revealed in meticulous detail the circumstances of the criminal conspiracy. According to Mr. Kenny, based upon Preslar's full and complete disclosures, he was sure "that a deal had in fact" been consummated. Indeed, Mr. Kenny indicated that he felt there was no further need for him to attend any additional meetings between the defendant and the Government because the plea agreement had already been negotiated and agreed upon.

With the exception of Assistant U.S. Attorney John J. McCann, the Government witnesses who testified at the hearing substantially supported the testimony of both defendant Preslar and attorney John Kenny. Indeed, Mr. West, who was primarily assigned to the case in the early fall of 1981, recited virtually identical terms to those propounded by Preslar. Mr. West testified that Mr. Kenny was contacted in early November, 1981 to discuss the possibility of Preslar cooperating in the investigation in exchange for a favorable plea disposition. Mr. West testified that he proposed that if Preslar agreed to provide testimony and corporate records implicating Weichert in the alleged bankruptcy fraud, and such information tended to be both truthful and probative of Weichert's guilt, the defendant would be allowed to plead guilty to one count of bankruptcy fraud with a maximum potential period of incarceration of five years.

Mr. West also testified that his "understanding" of the agreement was that it was contingent, i.e., if any of the conditions were unfulfilled, the Government had an absolute right to rescind the agreement. Thus, Mr. West believed that the agreement between the parties would be absolutely binding unless Preslar was either untruthful or failed to provide probative evidence implicating Weichert. If either of these conditions precedent were not satisfied, the Government reserved the right to revoke the agreement.

The Government now claims, almost four years after the fact, that defendant Preslar was not truthful and that the information he provided was nominal in terms of securing the present indictment. Despite the extensive documentary evidence submitted to the Government, and despite the meticulous and detailed revelations proffered by the defendant, the Government has taken the position that the defendant provided no meaningful information probative of Weichert's guilt. Moreover, the Government asserts, primarily through the testimony of Assistant U.S. Attorney John McCann, that throughout the period of negotiations Preslar was untruthful. On both of these bases, the Government claims that it had an absolute right to renege on the promises it made in December of 1981.

Based upon the testimony herein examined, the court finds that an express agreement was reached between defendant Preslar and the Government, that the defendant substantially complied with the agreement, and that the Government may not now renege on the agreement. The court finds that the Government has failed to establish either that Preslar was untruthful or that he failed to provide "substantial information" tending to implicate Weichert. It is interesting to note that Mr. McCann, who testified that Preslar was a "pathological liar" who provided no credible testimony and could not be trusted, failed to disclose a single factual instance of an untruth told

by Preslar.[4] Although some information provided by Preslar was not initially corroborated by the Government, no information was ever shown to be false. Indeed, based upon the testimony at the hearing relative to the indictment in this case, it is clear that virtually every alleged unlawful act contained therein was a product of information provided by the defendant, at least in the first instance. Ironically, assuming that the Government is correct in claiming that the defendant was untruthful, the logical extension of its claim is that there is no credible factual support for the present indictment. Virtually everything that the defendant disclosed to the Government relating to the alleged bankruptcy fraud is now incorporated in the indictment. Thus, if the information provided by the defendant is wholly unture, then based upon the Government's position the present indictment should never have been brought.

The Government simply cannot have it both ways. The fact that it brought the present indictment based in large part upon Preslar's full and complete disclosures, precludes it from now asserting that the defendant failed to provide probative and truthful information. Moreover, inasmuch as the agreement expressly called for a one-count charge with a maximum sentence to run concurrently with the defendant's state court sentence, such sentence already having been served, the only remedy available is dismissal of the present indictment against Preslar. Specific enforcement is the only remedy which will comport with due process and fundamental fairness. This court's ruling, of course, in no way effects the present indictment as it relates to defendant Weichert.

Accordingly, the present indictment is hereby dismissed as against defendant Preslar.

**4.** Indeed, despite Mr. McCann's characterization of Preslar as a pathological liar, in March of 1983 he had enough faith in his credibility to direct agents of the F.B.I. to question him further regarding the events surrounding the al-

### III. Defendant Weichert's Motion to Suppress

 Relying upon *United States v. Henry*, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1979) and the so-called derivative evidence rule, defendant Weichert seeks suppression of any evidence obtained by defendant Preslar while he was an agent of the United States Government and obtained *after* Weichert retained counsel in this case.

The hearing in this matter revealed absolutely no evidence indicating that defendant Preslar or any agent of Government contacted defendant Weichert outside the presence of counsel. Accordingly, the defendant's motion to suppress on the basis of a "potential" sixth amendment violation is hereby denied.

It is so Ordered.

leged bankruptcy fraud. Special Agent Hamilton testified that he visited Preslar in prison at Mr. McCann's behest in March of 1983, and that Preslar provided the identical information he had previously provided in the Fall of 1981.